# Exhibit 11

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, | No. C 00-00284 CRB |
| Plaintiff, | **ORDER RE: MOTION TO DISMISS** |
| v. | |
| PAVEL LAZARENKO, | |
| Defendant. | |

Petitioner Universal Trading & Investment Co. ("UTICo") initiated these ancillary proceedings to assert its claims to the forfeited funds of Pavel Lazarenko, claiming (1) its interest in the funds vested prior to any criminal activity, thus its interest is superior to that of the Government; and (2) it was a *bona fide* purchaser for value without knowledge that the funds were subject to forfeiture. Before the Court is the Government's Motion to Dismiss this action for want of standing and Motion for Summary Judgment. Petitioner UTICo has filed cross-motions for an order for a joint statement of undisputed facts and to compel discovery.

After reading and considering the arguments presented by the parties, the Court GRANTS the Government's Motion to Dismiss all claims under 21 U.S.C. § 853(n)(6)(A) because the Court finds that UTICo had no prior vested interests to the forfeited assets. Additionally, the Court GRANTS the Government's Summary Judgment Motion as to all

remaining claims because UTICo cannot adduce evidence that it was a *bona fide* purchaser for value of the forfeited assets who, at the time of the purchase, was without knowledge that the assets were subject to forfeiture. Petitioner's cross-motions are DENIED as moot.

## I. BACKGROUND

Pavel Lazarenko, the former Prime Minister of Ukraine, was convicted of conspiracy to launder money and seven substantive money laundering violations in June 2004. As part of his sentence, the court forfeited Lazarenko's interest in the funds and bonds that were the subject and proceeds of his money laundering activities.

In April 2004 and September 2006, the Court entered preliminary orders of forfeiture divesting Lazarenko of his interest in one account at FleetBoston Bank Robertson Stephens, Inc. and two accounts in Banc of America Investment Services, Inc. These orders became final at Lazarenko's sentencing in September 2006. As a result, the United States acquired title to the forfeited funds and bonds pursuant to the relation-back doctrine of 21 U.S.C. § 853(c) and (n)(7). In May 2006, Petitioner first claimed the funds and bonds in the three forfeited accounts under 21 U.S.C. §§ 853(n)(6)(A) and (B). In May 2008, Petitioner filed a supplemental and amended petition, asserting the same four claims as in its 2006 petition.

## II. DISCUSSION

Once a court has forfeited a defendant's interest in assets that are involved in, or traceable to, a crime of money laundering, the courts must use an ancillary proceeding to determine if any third party ownership interests exist in the forfeited assets. 21 U.S.C. § 853; Fed. R. Crim. P. 32.2(b)-(c). In denying a claim to the same assets at issue in the instant case, this Court articulated the legal principle that governs these ancillary proceedings. *See United States v. Lazarenko*, 575 F. Supp. 2d 1139 (N.D. Cal. 2008). The test that is applied to discern the weight of a third party interest depends on whether that party's interest arose before or after the criminal activities that gave rise to the forfeiture. *See id.* at 1146. If the interest arose prior to the criminal activity, then § 853(n)(6)(A) applies and the third party must prove a prior vested interest superior to that of the defendant at the time of the criminal activities. *Id.* If, however, the interest arose subsequent to the criminal acts, then under § 853(n)(6)(B) the third party must prove that it is a *bona fide* purchaser for value of the

2

forfeited assets who was reasonably without knowledge that the assets were subject to forfeiture. *Id.* The scope of the ancillary proceeding is limited to determining if the third party petitioner has a valid interest under either § 853(n)(6)(A) or § 853(n)(6)(B); an ancillary proceeding is not the proper venue to relitigate the underlying forfeiture. *See id.* at 1146-52.

UTICo brings four claims under § 853(n)(6)(A), claiming that its legal interest to the forfeited assets vested prior to Lazarenko's criminal activities. In entering the forfeiture order, the Court used the relation back doctrine to divest Lazarenko of his assets as of 1992, when the criminal conspiracy began. UTICo spills much ink attacking the validity of the date of forfeiture, claiming the assets could not have been seized until 1994 or 1997. However, this is not the proper proceeding to contest the underlying forfeiture action, the forfeiture has been finalized and this Court is bound by it. *See Lazarenko*, 575 F. Supp. 2d at 1148. The scope of this proceeding is limited to the narrow issue of whether UTICo has a claim under either § 853(n)(6)(A) or (B). *Id.* at 1146-48.

UTICo also asserts a claim under § 853(n)(6)(B), claiming that through its dealings with the Government of Ukraine it is a *bona fide* purchaser for value without knowledge that the assets were subject to forfeiture.

**1. UTICo's § 853(n)(6)(A) Claims**

To bring a petition, a third party has the burden to prove that it has statutory standing as well as Article III standing under the Constitution. To establish statutory standing in an ancillary proceeding, the petitioner must assert a "legal interest in property which has been ordered forfeited to the United States." 21 U.S.C. § 853(n)(2); *United States v. Timley*, 507 F.3d 1125, 1129-30 (8th Cir. 2007). To determine if a petitioner has standing under Article III primarily depends upon whether the petitioner has a sufficient interest in the property. *See United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004). As noted above, under § 853(n)(6)A), a third party petitioner may only assert a prior vested interest which was acquired prior to the criminal activity giving rise to the forfeiture. *Lazarenko*, F. Supp. 2d at 1150-51; *United States v. Chavez*, 323 F.3d 1216, 1218-19 (9th Cir. 2003); *United States v. Hooper*, 229 F.3d 818, 821-22 (9th Cir. 2000).

                     *a. 2005 Default Judgment*

As to UTICo's assertion that it is entitled to the funds based on its status as a judgment creditor, case law unambiguously demonstrates that judgment creditors are considered unsecured creditors until they place a lien on the assets to satisfy the judgment.[1] *See, e.g., United States v. Carmichael*, 440 F. Supp. 2d 1280, 1282 (M.D. Ala. 2006) (unsecured creditor who did not obtain a judgment lien until after property became subject to forfeiture cannot recover under § 853(n)(6)A) because no prior vested interest); *United States v. Speed Joyeros, S.A.*, 410 F. Supp. 2d 121, 125-26 (E.D.N.Y. 2006); *United States v. Hays*, No. 05-50045, 2006 WL 1228972 at *4-5 (W.D. La. May 4, 2006). UTICo has not placed any liens, thus it does not have a prior vested interest in the assets. Accordingly, UTICo lacks standing under its first theory of a prior vested interest pursuant to § 853(n)(6)(A).

The two equitable considerations UTICo raises are similarly without merit. UTICo contends that its status as a judgment creditor should relate-back to the actual controversy the suit was brought to remedy. First, UTICo argues that its claim against UESU arose from acts occurring from July 1993 to June 1994. UTICo believes the 2005 default judgment vested its interests in the assets as of 1993. UTICO argues that because the earliest criminal act with which the United States has jurisdiction occurred in July 1994 (at the earliest), it should prevail under § 853(n)(6)(A). The argument lacks merit. First, an ancillary proceeding is not the proper venue for relitigating the underlying forfeiture, thus neither is it the proper place to relitigate the application of the relation back doctrine. *See, e.g., Lazarenko*, 575 F. Supp. 2d at 1146-52. Moreover, UTICo has failed to provide support for, or even explain why, it is entitled to this form of prejudgment interest.

---

[1] UTICo's default judgment was entered against United Energy Systems of Ukraine ("UESU"), an entity, UTICo claims, that is a major instrumentality of the kickbacks through which Lazarenko and his agents accumulated over ninety percent of their criminal fortune. UTICo also traces the proceeds of Lazarenko's criminal assets to and through UESU by way of complicated money tracing tactics. No court, however, has ruled that Lazarenko and UESU are one and the same, or that UESU is subject to the forfeiture proceedings initiated against Lazarenko.

4

UTICo's second equitable argument claims that it is entitled to the assets even without a lien, because but for the Government's involvement in its litigation against UESU (resulting in a stay of five years and five months) UTICo would have been entitled to default judgment much earlier and would have recovered the assets well before the Government had the opportunity to conduct a forfeiture action. However, there is no way to know whether UTICo would have still been granted a default judgment without the nearly five and a half year stay. Indeed, the stay may have been a contributing factor in UESU's failure to prosecute its claims against UTICo and defend itself against UTICo's counterclaims.

The default judgment was not entered in favor of UTICo until 2005, whatever argument UTICo now makes does not negate the thirteen year time lapse between Lazarenko's crimes and UTICo's alleged interest.

### b. *Claims Arising from UTICo's Relationships with Ukraine*

UTICo's second and third claims arise from its relationship with the government of Ukraine. Pet. at ¶ 37-38. UTICo's second claim asserts an interest in the forfeited assets based on an alleged 1998 or 1999 assignment of rights to it from the Prosecutor General of Ukraine. *See id.* at ¶¶ 6, 37. The Prosecutor General allegedly assigned Ukraine's interest to these funds (as it was the alleged victim of conversion) to UTICo so that UTICo could recover in its stead. *Id.* at ¶ 38. UTICo claims this assignment gave it a superior interest under § 853(n)(6)(A). UTICo's third claim asserts that it is a *bona fide* purchaser for value of RICO claims in the United States stemming from contracts dated between 1998-1999 between it and the government of Ukraine. *Id.* at ¶ 69-97. The agreement provides that UTICo receive a twelve percent finder's fee of any assets recovered from the schemes perpetrated on Ukraine. *Id.* at ¶ 112.

With regards to UTICo's second claim derived from its alleged assignment of conversion claims from Ukraine's Prosecutor General, another court in this district has already invalidated that assignment, and though the decision is pending appeal, this Court is persuaded by the court's reasoning. *See Universal Trading & Investment Co. v. Kiritchenko*, C 99-3071 MMC (Order Granting Defendants' Motion for Summary Judgment), *appeal pending* No. 07-16873 (9th Cir.). In dismissing the lawsuit, Judge Chesney independently

applied Ukrainian law (after applying applicable choice of law doctrine) and found that the assignment was invalid because the Prosecutor General lacked the authority to assign Ukraine's interests. *See id.* at 26-31. Judge Chesney's holding was reinforced by the rulings of the Ukranian courts, which held the assignment invalid under similar reasoning. *See id.* at 31-33.

UTICo now argues that the Ukranian Supreme Court has altered its position and upheld UTICo's "material rights" under agreements with Ukraine. Pet's Opp. at 22. However, in explaining the rationale of the Ukranian Supreme Court, UTICo never asserts that it upheld or otherwise validated the assignment; rather, UTICo explains that the "Court affirmed UTICo's remuneration for implementing two Agreements." Pet'rs. Opp. at 22. The excerpt of the opinion provided by UTICo reads more as a factual finding of what the assignment contained, as opposed to a validation of it. *Id.* at 21-22. For the reasons noted in Judge Chesney's order, this Court holds that the assignment does not confer standing upon UTICo. Moreover, even if the assignment does confer an interest, the assignment did not occur until August of 1999, well after Lazarenko began his criminal activities in 1992.

Similarly, UTICo's third claim must fail because its agreement to purchase the RICO claims from Ukraine involve actions that arose between 1998-1999, <u>after</u> Lazarenko began his criminal enterprise.

Accordingly, UTICo's second and third theories fails to for lack of standing.

        c.   *UTICo's Constructive Trust*

Lastly, UTICo asserts that it is the beneficiary of a constructive trust, thus again its interest in the assets trump those of the Government. UTICo filed a civil suit against Lazarenko and others in 1999. At the time of UTICo's petition in 2006, that suit was still pending. However, it was dismissed in 2007 by Judge Chesney. *See Universal Trading & Investment Co. v. Kiritchenko*, CV 99-03073 MMC, *appeal pending*, No. 07-16873 (9th Cir.). Even if this lawsuit had not been dismissed, or if it is reinstated by the Ninth Circuit, the suit was not filed until 1999, well after Lazarenko began his criminal enterprise, thus UTICo's fourth theory fails as well.

**2. UTICo's § 853(n)(6)(B) Claim**

To succeed under § 853(n)(6)(B) UTICo must prove: (1) that it has a legal interest in the forfeited assets; (2) that it was a *bona fide* purchaser for value of the forfeited assets; and (3) that it was reasonably without cause to believe that the forfeited funds and bonds were subject to forfeiture. *Lazarenko*, 575 F. Supp. 2d at 1146.

In its petition, UTICo asserts that it is the beneficiary of a constructive trust arising from the 1999 lawsuit against Lazarenko and that it is a *bona fide* purchaser of the right to bring that lawsuit through an agreement with the Prosecutor General of Ukraine. As noted above, the assignment from the Prosecutor General is invalid, thus UTICo cannot prove the first element of a § 853(n)(6)(B) claim: there is no legal interest. Even if we assume the validity of the assignment, UTICo still fails to establish the remaining two elements necessary for proving a claim under § 853(n)(6)(B). UTICo cannot show that it purchased the forfeited assets from the Ukranian government (element two), and without a showing of purchase, it is impossible to show knowledge at the time of said purchase (element three). The Eleventh Circuit has spoken on the issue of which assets are protected under § 853(n)(6)(B) and held that the "only assets that are potentially immunized from forfeiture are those for which *value has been given*." *United States v. McCorkle*, 321 F.3d 1292, 1295 (11th Cir. 2003) (emphasis in original).

Here, the only "asset" that UTICo allegedly purchased was the right to bring claims in Ukraine's stead. UTICo has not provided any evidence that Ukraine, or its Prosecutor General, owned any of the specific assets forfeited in this case, or that it purchased the specific assets from Ukraine or its Prosecutor General for valuable consideration. Lastly even if elements one and two were satisfied, the assignment and purchase of Ukraine's claims were in an effort to recover assets that were the subject of criminal acts. Therefore, UTICo should have known that these assets could be subject to forfeiture in the United States. *See United States v. Brown*, 509 F. Supp. 2d 1239, 1247 (M.D. Fla. 2007) (explaining standard is whether the petitioner should have been aware of criminal activity and risk of forfeiture).

## IV. CONCLUSION

1   Given that UTICo does not have a legal interest in the forfeited assets that predates
2  Lazarenko's crimes, it lacks standing under § 853(n)(6)(A).  Moreover, UTICo's claim under
3  § 853(n)(6)(B) must fail because: (1) the assignment is invalid and does not confer a legal
4  interest to UTICo; and (2) UTICo cannot produce evidence showing that it was a *bona fide*
5  purchaser and that it lacked notice of forfeiture.  Accordingly, UTICo's motion for an order
6  for a joint statement of undisputed facts is denied as moot, as is its motion to compel
7  discovery.  UTICo has argued that additional discovery is required prior to adjudicating this
8  summary judgment motion; however, because the Court's ruling is premised on legal
9  principles, as opposed to findings of fact, additional discovery is not required.

10   **IT IS SO ORDERED.**

12  Dated: March 10, 2009
                                           _____
                                           CHARLES  R. BREYER
                                           UNITED STATES DISTRICT JUDGE