Exhibit 77

*Un-official translation. Check against original.*

## RULING
## IN THE NAME OF UKRAINE

**24 November, 2010**                                    **Kyiv**

### The Panel of justices of the Judicial chamber in civil cases
### of the Supreme Court of Ukraine consisting of:

**Chairman:**           [...]
**Justices:**           [...]

having considered *in camera* the case under RosUkrEnergo AG motion for recognition and enforcement of foreign court decision being subject to enforcement, interested party-debtor – National joint-stock company "Naftogaz of Ukraine", under the cassation appeal of the president of National joint-stock company (hereinafter - NJSC) "Naftogaz of Ukraine" against the ruling of Shevchenkivskyi district court of the city of Kyiv dated August 13, 2010 and the ruling of Kyiv City Court of Appeal dated September 17, 2010,

### e s t a b l i s h e d :

In July 2010 RosUkrEnergo AG applied to the court with a motion to recognize and to grant permission for enforcement of foreign court decision, in particular – of Separate Award rendered by Arbitration Institute of the Stockholm Chamber of Commerce on March 30, 2010, and also the Second Separate Award of the same Institute of June 8, 2010.

The motion is reasoned by the arguments that RosUkrEnergo AG and NJSC "Naftogaz of Ukraine" entered into chain of contracts, which provided that all controversies between the parties are to be resolved by Arbitration Institute of the Stockholm Chamber of Commerce, substantive law – Swedish law; and under the article 7 of the Law of Ukraine "On International Commercial Arbitration" it is an arbitration agreement. Since such controversies arose between the parties, RosUkrEnergo submitted the request for arbitration to this Arbitration Institute in April 2008, following which both

*Un-official translation. Check against original.*

parties appointed co-arbitrators, took part in the proceedings, performing their procedural rights and duties. After the above-mentioned awards were rendered, came into force and became binding, NJSC "Naftogaz of Ukraine", which was obliged to pay penalty, fine, and to transfer natural gas to RosUkrEnergo AG, refused to fulfill these awards voluntary.

According to the article IV of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New-York, 1958), to the article 35 of the Law of Ukraine "On International Commercial Arbitration" and to the section VIII of the Civil Procedural Code of Ukraine, RosUkrEnergo requested the court to recognize and to grant permission for enforcement of the above-mentioned awards, to issue a writ of execution.

Ruling of the Shevchenkivskyi district court of the city of Kyiv dated August 13, 2010, that was upheld by the Kyiv City Court of Appeal on September 17, 2010, sustained above-mentioned motion made by RosUkrEnergo. Separate Award rendered by Arbitration Institute of the Stockholm Chamber of Commerce on March 30, 2010 as well as the Second Separate Award of June 8, 2010 were recognized and the permission for their enforcement was granted.

The president of NJSC "Naftogaz of Ukraine" in the cassation appeal requests overruling the judicial decisions, referring to incorrect application of substantial and procedural law by the courts, and to render a new ruling on refusal to recognize and enforce Separate Award rendered by Arbitration Institute of the Stockholm Chamber of Commerce on March 30, 2010, and the Second Separate Award of the same Institute of June 8, 2010.

**The cassation appeal shall be dismissed because of the following reasons.**

Considering the provision of paragraph 2, section XIII "Transitional provisions" of the Law of Ukraine "On Judicial System and Status of Judges" of July 7, 2010 No.2453-VI, the case shall be decided under the provisions of the Civil Procedural Code of Ukraine of March 18, 2004, in the edition valid prior to entry into force of the Law of July 7, 2010.

*Un-official translation. Check against original.*

According to the art. 324 of the Civil Procedural Code of Ukraine grounds of cassation appeal shall be: incorrect application of the substantive law by the court or violation of procedural law.

The Supreme Court of Ukraine established that the subject of the current court proceedings is not the scrutiny of correctness (legality) of the arbitral awards, but examination of existence of procedural reasons for granting or refusing to grant permission for their enforcement.

Sustaining the motion for recognition, made by RosUkrEnergo AG, and granting permission for enforcement of decision of foreign court (international arbitration), the first-instance court, which conclusions were upheld by the court of appeal, acted on the premises that the awards are final and binding for the parties; all the contracts under which the arbitral tribunal rendered awards contain an arbitration agreement; the debtor did not challenge the awards on the grounds of procedural matters; the arguments that enforcement of the awards contradicts public policy of Ukraine are groundless; consequently, there are no legal reasons for refusing to sustain the motion for granting permission to enforce the awards. The court determined the amount to recover in the national currency.

The above-mentioned conclusions of the courts are in conformity with the circumstances of the case, and in compliance with procedural law, that was correctly applied by the court.

Recognition and enforcement of the foreign court decision – means the extension of legal effect of such decision throughout the territory of Ukraine and application of execution measures according to the rules, provided by the Civil Procedural Code of Ukraine.

Pursuant to the art. 390 (1) of the Civil Procedural Code of Ukraine decisions of the foreign courts (of the international arbitration) shall be recognized and enforced in Ukraine, if such recognition and enforcement is provided by international treaty, agreed to be binding by Verkhovna Rada of Ukraine, or by the principle of reciprocity.

*Un-official translation. Check against original.*

The Court established, that RosUkrEnergo AG and NJSC "Naftogaz of Ukraine" entered into chain of contracts, which provided that all controversies between the parties are to be resolved by the Arbitration Institute of the Stockholm Chamber of Commerce, substantive law – Swedish law; and under the article 7 of the Law of Ukraine "On International Commercial Arbitration" it is an arbitration agreement. Since such controversies had arisen, RosUkrEnergo submitted the request for arbitration to this Arbitration Institute in April 2008, and as a consequence the arbitral tribunal rendered Separate Award on March 30, 2010, and the Second Separate Award on June 8, 2010.

Notwithstanding that parties of contracts agreed to perform arbitral award voluntary, such award has not been performed by the NJSC "Naftogaz of Ukraine", and consequently RosUkrEnergo requested the court to recognize and grant permission for enforcement of above-mentioned awards, and to issue a writ of execution.

The motion made by RosUkrEnergo has been considered under provisions, provided by art. 395 of the Civil Procedural Code of Ukraine. The Panel of justices of the Supreme Court of Ukraine states that no violations of procedural law have been committed during the consideration of the motion. In particular, the court checked the conformity of the form and content of the motion with law and existence of the grounds for arbitral award's recognition and enforcement. At that, the court correctly did not scrutinize the correctness of arbitral award on the merits, since this would violate the sovereignty of the state, which court rendered the award. Such actions of the court are in conformity with national and international legislation in force, and with clarifications, provided by the Plenum of the Supreme Court of Ukraine in paragraphs 7, 12 of the Resolution of December 24, 1999, No. 12 "On the practice of considering by the courts of the motions for recognition and enforcement of foreign courts decisions and arbitral awards and on setting aside awards, rendered under international commercial arbitration proceedings on the territory of Ukraine".

In particular, the New-York Convention on the Recognition and Enforcement of Foreign Arbitral Awards of July 10, 1958 (hereinafter – New-York

*Un-official translation. Check against original.*

Convention), to which Ukraine is a party since 8 January, 1961, defines as fundamental principle that each Contracting State is obliged to recognize foreign arbitral awards as binding and to enforce them.

The New-York Convention, presuming the binding character of arbitral award, provides for exhaustive list of grounds that could not be interpreted broadly, under which competent court may refuse the recognition and enforcement of arbitral award.

This list is contained in the art. V of the New-York Convention, and they are also enumerated in art. 396 (2) of the Civil Procedural Code of Ukraine. Since the binding character and enforceability of arbitral award is presumed by international and national legislation, the burden of proof of existence of such grounds lies with the party that objects the recognition and enforcement of arbitral award (paragraph 1, art. V of the New-York Convention).

Therefore, NJSC "Naftogaz of Ukraine" was obliged to prove the existence of grounds for dismissing the motion for recognition and granting permission to enforce the arbitral award. The courts acted on premises that debtor failed to present such proofs.

It was established, that NJSC "Naftogaz of Ukraine" did not challenge the jurisdiction, the competence of the arbitration and arbitrability of the dispute, but actually invokes two grounds, objecting to granting permission for enforcement of arbitral award: arbitral award did not come into force under the law of the country where it was rendered; recognition and enforcement of this award is contrary to the public policy of the state.

The Panel of justices of the Supreme Court of Ukraine considers that the courts held correctly on the groundless of arguments invoked by NJSC "Naftogaz of Ukraine".

Thus, pursuant to the articles 38-40 of the Arbitration Rules of 2007, there is a possibility to decide a separate issue or part of the dispute in a separate award, and such award shall be final and binding on the parties when rendered and shall be carried out without delay. Neither Law of Ukraine "On International Commercial Arbitration" nor the Civil Procedural Code of

*Un-official translation. Check against original.*

Ukraine contain any additional procedures, which would require confirmation of the final character of the arbitral award.

Moreover, Separate Award of March 30, 2010 provides that parties agreed that final award on all claims connected with transactions, concluded in 2009, should be rendered not later than July 30, 2010, and on all other claims – this is a separate award, that would not be enforced until final award is rendered (vol. 1, pages 179-180). The Second Separate Award dated June 8, 2010 provides that parties agreed that the First Separate Award should be enforced after the date of rendering the Second Separate Award and NJSC "Naftogaz of Ukraine" agreed on this (vol. 2, pages. 38, 42, 44). Also the Arbitration Institute of the Stockholm Chamber of Commerce notified the local court on July 16, 2010 that the arbitral awards rendered on March 30, 2010 and on June 8, 2010 are final and binding, and that according to the Swedish legislation, awards may be challenged only on the procedural matters during 3 months (vol. 2, page 154).

During the hearings in the Supreme Court of Ukraine the representatives of NJSC "Naftogaz of Ukraine" explained, that arbitral awards were not challenged because there were no legal grounds in accordance with Swedish legislation, however the enforcement of these awards would be contrary to the public policy of Ukraine.

Thus, the Supreme Court of Ukraine concludes that arbitral awards have come into force.

Reference of NJSC "Naftogaz of Ukraine" that recognition and enforcement of arbitral award are contrary to the public policy of the state is groundless and unproved, however as it was mentioned before, it is its procedural obligation to prove such circumstances. In particular, the debtor failed to furnish any proof that transference to RosUkrEnergo of quantity of natural gas, defined in arbitral award, exceeds 50% of the total volume of natural gas extracted in the country annually from country's own resources, and 50% of annual needs of natural gas by the population. Besides, during the arbitral proceedings representatives of NJSC "Naftogaz of Ukraine" admitted completely that there were no legal reasons to acquire disputed quantity of natural gas, thus they admitted the illegality of seizure of natural gas from

RosUkrEnergo, being its property, that was mentioned in the Second Separate Award (vol. 2, pages 34-36). During the hearing in the Supreme Court of Ukraine representatives of NJSC "Naftogaz of Ukraine" confirmed that such explanations were given during the arbitration proceedings.

In addition to the factual admission by NJSC "Naftogaz of Ukraine" of the claims during the arbitral proceedings, the following should be mentioned concerning arguments on violation of the public policy of the state in case of granting permission for enforcement of award. As a rule, public policy means the legal order of the state, decisive principles and fundamentals, which constitute the basis of state's existent regime (concerning state's independence, integrity, sovereignty and inviolability, basic constitutional rights, liberties, guarantees, etc.). Also according to the art. 12 of the Law of Ukraine "On private international law", a rule of foreign state  law does not apply if such application leads to the consequences manifestly incompatible with fundamentals of legal order (public policy) of Ukraine. The debtor failed to invoke such arguments; moreover, the parties tothe dispute are legal entities, established according to the legislation in force, and independent participants of commercial activities, endued with full legal personality, and the dispute between them arose under the contractual relations.

According to the para. 1 art. 342 (1) of the Civil Procedural Code of Ukraine the court of cassation shall dismiss the cassation appeal and uphold the ruling, if the court has rendered a ruling in accordance with law.

Being guided by the articles 336, 342 of the Civil Procedural Code of Ukraine, the Panel of justices of the Judicial chamber in civil cases of the Supreme Court of Ukraine

### ruled :

To dismiss cassation appeal of the president of National joint-stock company "Naftogaz of Ukraine".

To uphold the ruling of Shevchenkivskyi district court of the City of Kyiv of August 13, 2010 and the ruling of Kyiv City Court of Appeal of September 17, 2010.

*Un-official translation. Check against original.*

This ruling cannot be subject to any appeal.

**Chairman: [...]**

**Justices:[...]**

# Exhibit 78

*Ukraine Business Online -*

## Didenko gets suspended sentence of three years

**Ukraine**

Posted by:

Posted on : 2011/9/6 10:09:51

**The prosecution asked the court to sentence Didenko to five years in jail**

KYIV, September 6, 2011 (UBO) &ndash; Former Naftogaz First Deputy Head Ihor Didenko received a suspended sentence of three years and has been released from custody, UkrInform reported. The Pechersk District Court of Kyiv announced the verdict at a session on Monday, September 5, UkrInfrom reported.   Didenko, along with former Chairman of the State Customs Service Anatoliy Makarenko and former Chief of the Kyiv Regional Customs Service Taras Shepitko, was prosecuted for the customs clearance of 11 billion cubic meters of natural gas in 2009.   A criminal case on the illegal customs clearance of gas was opened under a lawsuit lodged by gas intermediary RosUkrEnergo after the Arbitration Institute of the Stockholm Chamber of Commerce on June 8, 2010 obliged Naftogaz of Ukraine to return 11 billion cubic meters of gas to RosUkrEnergo and provide an additional 1 billion cubic meters as a penalty for the breach of contract.   The prosecution asked the court to sentence Didenko to five years in jail.   However, after Didenko told the court that he had signed contracts for the customs clearance of natural gas owned by RosUkrEnergo in 2009, because he was absolutely sure that he had received the directives to sign the contracts from the Cabinet of Ministers, rather than from former Prime Minister Yulia Tymoshenko, the charges against him were reclassified into a milder article.

# Exhibit 79

# EAPCOMMUNITY

Eastern Partnership Community

**DEC 19, 2011**

English Русский

Home

EaP Dossier

Work with EaP

Daily News

EaP Community

About us

### UkrGazEnergo returns to Ukrainian gas market

On 24 March, the National Electricity Regulatory Commission granted the Ukrainian natural gas supplier UkrGazEnergo (co-owned by Naftogaz and RosUkrEnergo) a new licence for the supply of over 5 billion cubic metres of gas annually to Ukrainian industrial consumers. UkrGazEnergo has reportedly already started negotiations on the purchase of gas from various sources, including Russia. (UkrGazEnergo was established in 2006 as an intermediary for the sale of imported gas in Ukraine. In 2008, the then prime minister Yulia Tymoshenko prohibited the company from operating on the Ukrainian domestic market).
2011.03.24, www.kommersant.ru, www.oilru.com

| | | | december | | | » |
|---|---|---|---|---|---|---|
| s | m | t | w | t | f | s |
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

#### Other news of the day

FRIDAY, 25 MARCH, 2011

Russia-Ukraine dispute over pipelines

Russian journalist sentenced in Belarus

Leonid Kuchma charged in Gongadze case

Ukrainian Greek Catholics elect new archbishop

UkrGazEnergo returns to Ukrainian gas market

**Partner states**

Armenia

Azerbaijan

Belarus

Georgia

Moldova

Ukraine

All rights reserved.
No part of this website's content may be reproduced or distributed in any form or by any means, or stored in a database or retrieval system, without the prior written permission of the publisher.

Copyright © 2010-2011 Ośrodek Studiów Wschodnich | 00-564 Warszawa, ul. Koszykowa 6A | tel.: (+48 22) 525 80 00 | fax: (+48 22) 525 80 40 | e-mail: eap@easternpartnership.org

Exhibit 80

# Paper looks at ousting of Ukrainian energy company from joint venture with RUE

Friday, Jul 22,2011, 9:34:51 PM

On 30 June 2011, the Kiev Economic Court of Appeal passed a decision to strip the national joint-stock company Naftohaz Ukrayiny of the status as a stakeholder in Ukrgazenergo. They did it as if to imply, "well, you were asking for it yourselves". And they kicked Naftohaz out retroactively from the date of Ukrgazenergo was formed on 2 February 2006. As a result, the need to pay Naftohaz accumulated dividends of several million dollars disappeared. Now these dividends automatically transfer to RosUkrEnergo which is now the single founder of Ukrgazenergo. And really, why does Naftohaz needs these funds? Here you have another legal method for pumping state money into private pockets under the guise of the need for strict execution of a court order.

Moreover, this rather cunning move gives RosUkrEnergo and via it, Russia's Gazprom as well direct access to almost singular control over Ukraine's domestic Gas market! Without any losses. And they even made a decent amount on the operation. Taking into account that the co-founders of RosUkrEnergo (Dmytro Firtash's company and Gazprom) already control the lion's share of gas distribution networks in Ukraine via regional gas utilities which they either control or have purchased, they merely need the Ukrainian gas transport system to have absolute control over it. Including all of Ukrtranshaz' trunk pipelines and underground storage facilities.

The law passed by parliament last year on reforming the Ukrainian gas market was useful in this effort. And now the national regulator the National Electricity Regulating Commission (NERC) is demanding that the gas transporting functions be turned over exclusively to Naftohaz' subsidiary, Ukrtranshaz. Why is this being demanded now? Probably because if privatization becomes an issue, it will be significantly easier to take Naftohaz' profitable gas transporting subdivision without the numerous debts and international obligations of Naftohaz itself.

The last time things involved RosUkrEnergo, the talk was of the sanctity of the decisions made by the Stockholm Court of Arbitration...

The decision by the Kiev Economic Court of Appeals to cardinally change the structure of the closed joint-stock company Ukrgazenergo became public knowledge after being published in the Unified State Registry of Court Decisions.

[Passage omitted: Background of RosUkrEnergo and Ukrgasenergo]

The court explained that in February 2006, Naftohaz, in founding the closed joint-stock company, did not agree its decision with the Fuel and Energy Ministry, which, up until the moment of the first Naftohaz founders' meeting was held (and while Naftohaz was only formally called a joint stock company), was its highest body.

The court dug deep enough to determine that if the decision to liquidate Ukrgazenergo was adopted, then "that decision would create legal consequences not only for the participants in the dispute, but for all entities in the association (the closed joint-stock company) in economic, civic, labour and other legal relations". Therefore, on 30 June 2011, the court determined ...[ellipsis as published] to deem void the clause of the foundation agreements of the closed joint-stock company Ukrgazenergo in just that part which concerns one of the founders Naftohaz. The company did in fact commit a violation, by not agreeing its decision to found the closed joint-stock company with the Fuel and Energy Ministry! And then the court also debated whether or not Ukrgazenergo is a subsidiary of Naftohaz.

But it turned out that the essence of this tale is such: the court took into account the fact that Ukrgazenergo could have been set up by one shareholder RosUkrEnergo, without the participation of the plaintiff, Naftohaz Ukrayiny. Because RosUkrEnergo had two shareholders, Gazprom and Dmytro Firtash' company, while Naftohaz had only one the Ukrainian Cabinet of Ministers...[ellipsis as published]

And that is how they solved the case of Naftohaz Ukrayiny vs Ukrgazenergo. And this time, in favour of RosUkrEnergo and its founders.

And so, the next day, the sole founder of Ukrgazenergo, based upon the decision of the court, is RosUkrEnergo. It is not difficult to predict how this cardinal change in the ownership of Ukrgazenergo will affect the gas market (and not only it), if one compares Pictures 1 and 2.

[Picture 1 is titled "The structure of Ukrgazenergo's authorized share capital in 2006". Its left-hand side shows that Ukrgazenergo is 50 per cent owned by Naftohaz Ukrayiny, while the latter is 100 per cent owned by Ukraine. The right-hand side shows that Ukrgazenergo is 50 per cent owned by RosUkrEnergo, which is owned on a fifty-fifty basis by Dmytro Firtash and Gazprom, while Gazprom is 51 per cent owned by the Russian Federation.

Picture 2 is titled "The structure of Ukrgazenergo's authorized share capital in 2011". Its left-hand side is empty, while the right-hand side shows that Ukrgazenergo is 100 per cent owned by RosUkrEnergo, which is owned on a fifty-fifty basis by Dmytro Firtash and Gazprom, while Gazprom is 51 per cent owned by the Russian Federation.]

Essentially, this is like a serious version of the child's game "find the difference". Picture 1 presents the schematic structure of the shareholder capital of Ukrgazenergo when it was formed on 2 February 2006. It is clear that despite the presence of RosUkrEnergo, the practical owners of Ukrgazenergo are the Ukrainian and Russian gas companies Naftohaz and Gazprom.

And 100 per cent of the shares in Naftohaz Ukrayiny are the property of the state. And it is managed by the authorised relevant ministry and today that is the Ministry of Energy and Coal Industry headed by Yuriy Boyko.

Least profitable business

The direct state share of the Russian Federation in the structure of Gazprom's authorised capital (based on its financial reports from 2010) is 50.002 per cent. The owners of American Depository Receipts (ADR) own another 24.35 per cent while other registered entities own the other 25.648 per cent. As a rule, the owners of ADRs and registered entities are not named. One can only guess who they might be. The registrar of Gazprom's shares stresses that the registration of shares in that open joint stock company is still continuing. Whoever does not make it in time will be too late.

It is also clear that Firtash, as a co-founder of RosUkrEnergo is not playing on the Ukrainian side: RosUkrEnergo has a Swiss legal address and pays taxes to the Swiss canton of Zug, and not in Ukraine. But isn't that just a formality?..[ellipsis as published]

Now let US return to Picture 1. If you cover the left side of it, you get Picture 2: the structure of the authorised capital in Ukrgazenergo after the decision by the Kiev Economic Court of Appeals on 30 June 2011.
You will have to agree that even this schematic shows a mind-blowing difference...[ellipsis as published] It is almost the same as the likely consequences of the court decision described above.

By the way, Naftohaz Ukrayiny has not only been removed as a shareholder in Ukrgazenergo. As has already been noted, it still has the honorary duty of providing gas (mainly that which it produces itself and at regulated tariffs) to the population, communal services and budget-financed organizations through the subsidiary Haz Ukrayiny. You won't make a lot of money doing that, especially given the Cabinet's idea to outfit every consumer with meters for gas and heat if that happens, the consumption of gas will fall. (By the way, that will probably be a headache for the regional gas utilities it will be harder to write-off losses of an unaccounted for 3-4 billion cubic meters of gas a year to anyone...[ellipsis as published]). Moreover, the need these categories of gas consumers have for gas a year is within the bounds of 23 billion cubic meters a year.

But the agreement with Gazprom dated 19 January 2009 is still in effect! Where is Naftohaz going to send its nearly 18 billion cubic meters of Russian gas purchased on contract (and that is over 30 billion cubic meters in 2011), if the underground storage facilities are mainly filled with the 12 billion cubic meters of RosUkrEnergo gas and the newly resurrected Ukrgazenergo is going to try to defend its rights to several billion cubic meters of "its" gas which were once stored in Ukrainian underground facilities.

Of course, it cannot be ruled out that Ukrgazenergo will "search" for the same RosUkrEnergo gas. As a commercial entity, Naftohaz is not likely to find that any easier. This is especially true because in April the Cabinet revoked Naftohaz monopoly rights to clear imported gas through customs (resolution number 343). Now anyone who has the gas and the ability can do that. Even if it is already pumped into Ukrainian underground gas storage facilities.

The idea was quite market-based a free choice for sellers and buyers! If Naftohaz was not tied to strict contract agreements with Gazprom through 2019; had the ability to compete on price with other buyers of Gazprom gas; if it could sell its gas at Gazprom-contracted prices to industrial consumers; and if it had the chance to export gas to Europe where Gazprom let no-one in freely.

Well, with perhaps the exception of a gas transport joint venture, set up on the basis of the Ukrainian gas transport system...

And to learn about how easy it is to liquidate a superfluous founder in a joint venture when needed just read from the top.



12 of 16 DOCUMENTS

Copyright 2011 British Broadcasting Corporation
All Rights Reserved
BBC Monitoring Kiev Unit
Supplied by BBC Worldwide Monitoring

July 13, 2011 Wednesday

**LENGTH:** 949 words

**HEADLINE:** Ukraine's state-run energy company loses share in joint gas venture - daily

**BODY:**

Ukrainian state-run energy company Naftohaz Ukrayiny has been stripped of its share in the controversial UkrGazEnergo company by a court ruling, a Ukrainian daily has reported. The Ukrainian Energy Ministry is set to appeal against the decision, the paper said. It quoted legal experts as predicting significant losses to Naftohaz even if it wins the case in the court of appeal. It will not be able to prevent the appearance of at least half of 6bn cu. m. of gas owned by UkrGazEnergo on Ukraine's domestic market either, the daily added. The following is the text of the article by Oleh Havrysh entitled "Not a joint venture any more" and published in the Ukrainian version of the Russian business daily Kommersant on 11 July:

Ukrainian national oil and gas company Naftohaz Ukrayiny has lost its share in the UkrGazEnergo company, which is co-owned by [the Swiss-registered intermediary gas trader] RosUkrEnergo. UkrGazEnergo has 6bn cu.m. of gas in possession. The Kiev economic court of appeal excluded the monopoly from the UkrGazEnergo's board of directors based on the documents provided by Naftohaz itself. The Coal and Energy Ministry pledged to challenge this decision. But even if it succeeds, Naftohaz will not be able to prevent the return of UkrGazEnergo to the market, experts say.

On Friday [8 July], the state register of court verdicts published a ruling of the Kiev economic court of appeal which on 30 June annulled Naftohaz Ukrayiny's share in the UkrGazEnergo's authorized capital. The ruling mentioned that Naftohaz committed a violation when it adjusted its participation in the joint venture. It is curious that the court ruling was adopted based on reasons provided by Naftohaz itself. The fact is that in 2008, at the initiative of Yuliya Tymoshenko, who was the prime minister at the time, Naftohaz demanded that UkrGazEnergo be closed down as the participation of the monopoly in the joint venture was not coordinated with the Energy Ministry. On 1 October 2008, the economic court of Kiev ruled that UkrGazEnergo be liquidated, but the decision was contested in the cassation court. Now, the court decided only Naftohaz should be removed from the UkrGazEnergo's list of founders, which means that RosUkrEnergo is the only owner of the joint venture.

UkrGazEnergo was setup in February 2006 as an intermediary trader of imported gas in Ukraine's domestic market. Naftohaz and RosUkrEnergo were its co-owners on a fifty-fifty basis (50 per cent belonged to Naftohaz, 50 per cent to businessman Dmytro Firtash). In May 2008, at Yuliya Tymoshenko's initiative, the company suspended its participation in the domestic gas market. At the moment, the company owned 6bn cu.m. of gas pumped to the underground gas storage. But they were not to be sold in the domestic market as the Cabinet of Ministers blocked the customs clearance

Ukraine's state-run energy company loses share in joint gas venture - daily BBC Monitoring Kiev UnitSupplied by BBC Worldwide Monitoring July 13, 2011 Wednesday

of the gas. Currently, the company holds talks with Naftohaz as to the gas' status and its owner. a source in UkrGazEnergo told Kommersant.

The press services of Naftohaz and UkrGazEnergo refused to comment on the court ruling. But according to a high-ranking source in the Energy Ministry, the ruling carries a serious challenge to the monopoly's business. "Even now chemical companies of Ukraine purchase gas from Dmytro Firtash's structures. If UkrGazEnergo's gas appears on the market. Naftohaz risks losing the most financially reliable consumers, i.e. industrial enterprises," the source said. Under its estimates, in this case Naftohaz's losses will exceed 2.4bn dollars. The source recalled that earlier UkrGazEnergo was licensed to supply over 5bn cu.m. of gas under a non-regulated tariff and was negotiating its purchase with Russia. "We will question the court's ruling on exclusion of Naftohaz Ukrayiny from UkrGazEnergo and will press for the company's closure and prevention of its return to the market," the source in the ministry said.

Managing partner of the Asters legal company, Oleksiy Didkovskyy, said that Naftohaz has high chances of winning the case in the court of appeals. "A company could not be expelled from the list of founders against its will. Even if it broke some rule, the court could have obliged it to correct the mistake. but could not have excluded it," Mr Didkovskyy said. In his view, given that the court of cassation does not reinstate Naftohaz as UkrGazEnergo's co-owner, the monopoly could claim in court that its share in the assets that have been on the balance sheets of the company at the moment of liquidation should be reimbursed. "Naftohaz has the right to take half of the gas owned by UkrGasEnergo," a partner of the legal company Law Partners, Andriy Domanskyy, confirmed.

But even if Naftohaz regains control over UkrGazEnergo or retrieves a half of the gas, it will find it difficult to block sales of the rest of gas on Ukraine's domestic market, the chief of the analytical department of Brokerkredytservis, Maksym Shein, said. "The European Commission demands that Ukraine reform its natural gas market. So far, the Ministry of Energy and Naftohaz failed to make any progress here as the national company has not been restructured and no new suppliers have appeared in the market," Mr Shein said. Therefore, if Naftohaz tries to obstruct gas deliveries, UkrGazEnergo might contest these actions in court, a member of the Ukrainian parliament's committee for the fuel and energy sector, Serhiy Pashynskyy, said. In early April, the Cabinet of Ministers endorsed decree No 343 cancelling Naftohaz Ukrayiny's monopoly right to customs clearance of natural gas delivered to the Ukrainian gas transport system for domestic consumption.

Source: Kommersant-Ukraina, Kiev, in Russian 11 Jul 11

**LOAD-DATE:** July 13, 2011

Exhibit 81



12 of 16 DOCUMENTS

Copyright 2011 British Broadcasting Corporation
All Rights Reserved
BBC Monitoring Kiev Unit
Supplied by BBC Worldwide Monitoring

July 13, 2011 Wednesday

**LENGTH:** 949 words

**HEADLINE:** Ukraine's state-run energy company loses share in joint gas venture - daily

**BODY:**

Ukrainian state-run energy company Naftohaz Ukrayiny has been stripped of its share in the controversial UkrGazEnergo company by a court ruling, a Ukrainian daily has reported. The Ukrainian Energy Ministry is set to appeal against the decision, the paper said. It quoted legal experts as predicting significant losses to Naftohaz even if it wins the case in the court of appeal. It will not be able to prevent the appearance of at least half of 6bn cu. m. of gas owned by UkrGazEnergo on Ukraine's domestic market either, the daily added. The following is the text of the article by Oleh Havrysh entitled "Not a joint venture any more" and published in the Ukrainian version of the Russian business daily Kommersant on 11 July:

Ukrainian national oil and gas company Naftohaz Ukrayiny has lost its share in the UkrGazEnergo company, which is co-owned by [the Swiss-registered intermediary gas trader] RosUkrEnergo. UkrGazEnergo has 6bn cu.m. of gas in possession. The Kiev economic court of appeal excluded the monopoly from the UkrGazEnergo's board of directors based on the documents provided by Naftohaz itself. The Coal and Energy Ministry pledged to challenge this decision. But even if it succeeds, Naftohaz will not be able to prevent the return of UkrGazEnergo to the market, experts say.

On Friday [8 July], the state register of court verdicts published a ruling of the Kiev economic court of appeal which on 30 June annulled Naftohaz Ukrayiny's share in the UkrGazEnergo's authorized capital. The ruling mentioned that Naftohaz committed a violation when it adjusted its participation in the joint venture. It is curious that the court ruling was adopted based on reasons provided by Naftohaz itself. The fact is that in 2008, at the initiative of Yuliya Tymoshenko, who was the prime minister at the time, Naftohaz demanded that UkrGazEnergo be closed down as the participation of the monopoly in the joint venture was not coordinated with the Energy Ministry. On 1 October 2008, the economic court of Kiev ruled that UkrGazEnergo be liquidated, but the decision was contested in the cassation court. Now, the court decided only Naftohaz should be removed from the UkrGazEnergo's list of founders, which means that RosUkrEnergo is the only owner of the joint venture.

UkrGazEnergo was setup in February 2006 as an intermediary trader of imported gas in Ukraine's domestic market. Naftohaz and RosUkrEnergo were its co-owners on a fifty-fifty basis (50 per cent belonged to Naftohaz, 50 per cent to businessman Dmytro Firtash). In May 2008, at Yuliya Tymoshenko's initiative, the company suspended its participation in the domestic gas market. At the moment, the company owned 6bn cu.m. of gas pumped to the underground gas storage. But they were not to be sold in the domestic market as the Cabinet of Ministers blocked the customs clearance

Ukraine's state-run energy company loses share in joint gas venture - daily BBC Monitoring Kiev UnitSupplied by BBC
Worldwide Monitoring July 13, 2011 Wednesday

of the gas. Currently, the company holds talks with Naftohaz as to the gas' status and its owner, a source in
UkrGazEnergo told Kommersant.

The press services of Naftohaz and UkrGazEnergo refused to comment on the court ruling. But according to a
high-ranking source in the Energy Ministry, the ruling carries a serious challenge to the monopoly's business. "Even
now chemical companies of Ukraine purchase gas from Dmytro Firtash's structures. If UkrGazEnergo's gas appears on
the market, Naftohaz risks losing the most financially reliable consumers, i.e. industrial enterprises," the source said.
Under its estimates, in this case Naftohaz's losses will exceed 2.4bn dollars. The source recalled that earlier
UkrGazEnergo was licensed to supply over 5bn cu.m. of gas under a non-regulated tariff and was negotiating its
purchase with Russia. "We will question the court's ruling on exclusion of Naftohaz Ukrayiny from UkrGazEnergo and
will press for the company's closure and prevention of its return to the market," the source in the ministry said.

Managing partner of the Asters legal company, Oleksiy Didkovskyy, said that Naftohaz has high chances of
winning the case in the court of appeals. "A company could not be expelled from the list of founders against its will.
Even if it broke some rule, the court could have obliged it to correct the mistake, but could not have excluded it," Mr
Didkovskyy said. In his view, given that the court of cassation does not reinstate Naftohaz as UkrGazEnergo's
co-owner, the monopoly could claim in court that its share in the assets that have been on the balance sheets of the
company at the moment of liquidation should be reimbursed. "Naftohaz has the right to take half of the gas owned by
UkrGasEnergo," a partner of the legal company Law Partners, Andriy Domanskyy, confirmed.

But even if Naftohaz regains control over UkrGazEnergo or retrieves a half of the gas, it will find it difficult to
block sales of the rest of gas on Ukraine's domestic market, the chief of the analytical department of Brokerkredytservis,
Maksym Shein, said. "The European Commission demands that Ukraine reform its natural gas market. So far, the
Ministry of Energy and Naftohaz failed to make any progress here as the national company has not been restructured
and no new suppliers have appeared in the market," Mr Shein said. Therefore, if Naftohaz tries to obstruct gas
deliveries, UkrGazEnergo might contest these actions in court, a member of the Ukrainian parliament's committee for
the fuel and energy sector, Serhiy Pashynskyy, said. In early April, the Cabinet of Ministers endorsed decree No 343
cancelling Naftohaz Ukrayiny's monopoly right to customs clearance of natural gas delivered to the Ukrainian gas
transport system for domestic consumption.

Source: Kommersant-Ukraina, Kiev, in Russian 11 Jul 11

**LOAD-DATE:** July 13, 2011

Exhibit 82



# EUROPEAN COURT OF HUMAN RIGHTS
## COUR EUROPÉENNE DES DROITS DE L'HOMME

April 2011

## FIFTH SECTION

Application no. 6492/11
by Yuriy Vitaliyovych LUTSENKO
against Ukraine
lodged on 21 January 2011

### STATEMENT OF FACTS

## THE FACTS

The applicant, Mr Yuriy Vitaliyovych Lutsenko, is a Ukrainian national who was born in 1964 and lives in Kyiv. He is currently detained in Kyiv SIZO no. 13. He is represented before the Court by Mr I.Y. Fomin, a lawyer practising in Kyiv.

### A. The circumstances of the case

The facts of the case, as submitted by the applicant, may be summarised as follows.

The applicant is a former Minister of the Interior and the leader of the opposition party Narodna Samooborona.

On 2 November 2010 the General Prosecutor's Office ("the GPO") instituted criminal proceedings against the applicant and Mr P. under Article 191 § 3 of the Criminal Code. The GPO asserted that while he was Minister of the Interior from December 2007 to January 2010 the applicant had unlawfully arranged for different work-related benefits for his driver – the aforementioned Mr P. On the same date, the applicant gave a written undertaking not to abscond.

On 5 November 2010 the applicant was formally charged.

On 9 November 2010 he appealed to the Pechersky District Court ("the Pechersky Court") against the decision to institute criminal proceedings against him. This appeal was examined by the court with delay, due to the



failure of the GPO on three occasions to submit the case file to the court in accordance with the court's requests.

During the pre-trial investigation, the applicant appeared for all investigating activities and the investigator had no complaints about his cooperation.

On 11 December 2010 the GPO instituted another criminal case against the applicant for abuse of office under Article 365 § 3 of the Criminal Code on the grounds that the applicant had arranged for the allocation of a one-room apartment to his driver Mr P. This criminal case was joined with the first one brought against the applicant.

On 13 December 2010 the GPO completed the investigation and formally indicted the applicant with both offences, having, however, reclassified his actions specified in the first charge under Article 191 § 5 of the Criminal Code. The applicant was summoned to appear before the investigator in order to study the criminal case file against him.

On 15 December 2010 the applicant was given only the minority of his case file for familiarisation. According to the investigator, the majority of the materials were not available due to the examination of the applicant's appeal of 9 November 2010. The investigator summoned the applicant to study the case file on 16 and 17 December 2010.

On 16 December 2010 the Pechersky Court examined the applicant's appeal against the decision to institute criminal proceedings against him and decided to transfer it to the GPO, given that at the time of the examination of the case the investigation had already been completed.

On 17 December 2010 the applicant and his lawyer appeared before the investigator to study the case file. However, the investigator did not provide them with the complete file, referring to the fact that some materials were still with the Pechersky Court. The investigator served on the applicant a summons to appear on 20 through 24 December 2010 in order that his familiarisation with the case file be continued.

On 20 and 21 December 2010 the case file materials were stated to be not ready, despite the applicant's desire to get acquainted with them.

On 22 December 2010 the investigator informed the applicant that he had decided that all accused and their lawyers would be given only one volume of the file at a time, and the next volume would be given only after all of them had completed their familiarisation with the previous one. The copy of the list of materials of each volume would be given after such familiarisation.

On the same date, the applicant's representative asked to be allowed to make digital photos of the materials in the case file. This request was rejected.

On 22 and 23 December 2010 the applicant and his lawyer were acquainted with the materials in the case file.

On 22 December 2010 the applicant was cross-examined within an unrelated set of criminal proceedings.

On 24 December 2010 the applicant's representative was busy representing a client in another set of proceedings, of which he had informed the investigator in advance.

On Sunday 26 December 2010 at 1 p.m. the applicant was arrested near his house by officers of the Security Service and the GPO investigator.

During his arrest, the applicant was not informed about the reasons for his arrest and was not given a copy of the charge sheet.

The investigator also refused to give a copy of the charge sheet to the applicant's representative.

On 27 December 2010 the Pechersky Court held a hearing, in which it examined the GPO's application to change the preventive measure affecting the applicant from the written obligation not to abscond to being held in custody. The applicant's lawyer found out about this hearing twenty minutes prior to its start.

The applicant and his lawyer only found out during the hearing that it concerned the GPO's application to change the preventive measure affecting the applicant and not the grounds for his arrest. The applicant's lawyer asked the court to adjourn the hearing in order to study the GPO's application and its supporting materials. The court rejected the lawyer's request on the grounds that it was not provided for by law.

The GPO founded its application to change the preventive measure affecting the applicant on the fact that after the completion of the pre-trial investigation, the applicant and his lawyer had been given access to the criminal case file but had delayed their study of the file by failing to appear on 14, 16, 17 and 20 December 2010 and by studying the file slowly. The GPO also accused the applicant of giving information from the case file to the media, including the names of witnesses, and of putting pressure on those witnesses by doing so. Therefore, the GPO argued that it could not conduct the investigative actions concerning the applicant properly without changing the preventive measure. The court allowed the application, accepting the GPO's reasoning and also finding that there were no personal circumstances pertaining to the applicant that would prevent his being held in custody, that the applicant had sought to evade the investigative actions and decisions of the investigator, that he was accused of a crime punishable by imprisonment from three to seven years, that he had not admitted his guilt and had refused to make a statement, and that he was capable of influencing the investigation and putting pressure on the witnesses, either personally or through others.

The applicant's lawyer appealed against the decision of 27 December 2010 to the Kyiv Court of Appeal, considering it unfounded. In his appeal, he claimed, *inter alia*, that the applicant had not violated his obligation not to abscond, that studying the case file was the applicant's right and not an obligation, that the investigator had not given him all the materials in the case file and had knowingly restricted his right of access to the case file. The lawyer further stated that he and the applicant had not known the grounds for the applicant's arrest well in advance of the hearing and that the court had refused to postpone the hearing, and, therefore, that they had been put in a disadvantageous position, in violation of the principle of equality of arms. He complained that there was no evidence or information proving that the applicant would evade the investigation or interfere with it. The lawyer also pointed out that the court had referred to the fact that the applicant had refused to admit his guilt and to make a statement as grounds for his arrest, thereby violating the applicant's constitutional rights.

On 5 January 2011 the Kyiv Court of Appeal rejected the appeal and upheld the decision of the first-instance court.

5. Any such actions as provided for by paragraphs 1, 2, 3 or 4 of this Article, if committed in respect of an especially large amount, or by an organized group, –

shall be punishable by imprisonment for a term of seven to twelve years, with a prohibition on the right to occupy certain positions or engage in certain activities for a term of up to three years and confiscation of property."

### Article 365. Abuse of authority or official powers

"1. Abuse of authority or official powers, namely the intentional commission of acts by an official which manifestly go beyond the scope of the rights and powers vested in him or her and which cause substantial damage to the State or public interests, or to lawful interests, rights and freedoms of natural or legal persons ...

2. Abuse of authority or official powers accompanied with violence, use of weapons, or actions that cause injury or are demeaning to a victim's personal dignity ...

3. Any such actions as provided for by paragraph 1 or 2 of this Article, if they caused any grave consequences, shall be punishable by imprisonment for a term of seven to ten years with a prohibition on the right to occupy certain positions or engage in certain activities for a term of up to three years."

### 3.  Code of Criminal Procedure

### Article 43
### The accused and his rights

"... The accused has the right to ... get acquainted with all materials in the case file after the [conclusion of the] preliminary investigation or inquiry ..."

### Article 48
### Duties and rights of defence counsel

"... From the moment of his entry into the case, counsel for the defendant has the right:

...

3) to get acquainted with the materials which substantiate the detention of a suspect or choice of a preventive measure or indictment, and, after the [conclusion of the] pre-trial investigation, with all materials in the case-file ..."

### Article 142
### Explaining his or her rights to an accused during an investigation

"When charging an accused, the investigator must explain to the accused that during the pre-trial investigation he or she is entitled to:

...

2) make a statement about the charges against him or her or refuse to make a statement and to answer questions;

...

6) with the permission of the investigator, be present at the performance of certain investigative actions;

7) after the completion of the pre-trial investigation, get acquainted with all the materials in the case file..."

### Article 148
### Purpose and grounds for the application of preventive measures

"Preventive measures shall be imposed on a suspect, accused, defendant or convicted person in order to prevent him or her from attempting to abscond from an inquiry, investigation or the court, to obstruct the establishment of the truth in a

## B. Relevant domestic law

### 1. Constitution of Ukraine

#### Article 19

"...Bodies exercising State power and local self-government bodies and their officials are obliged to act only on the grounds, within the limits of authority, and in the manner envisaged by the Constitution and the laws of Ukraine."

#### Article 29

"Every person has the right to freedom and personal inviolability.

No one shall be arrested or held in custody other than pursuant to a reasoned court decision and [then] only on the grounds and in accordance with the procedure established by law.

...

Everyone arrested or detained shall be informed without delay of the reasons for his or her arrest or detention, apprised of his or her rights, and from the moment of detention shall be given the opportunity to personally defend himself or herself, or to have the legal assistance of defence counsel.

Everyone detained has the right to challenge his or her detention in court at any time.

Relatives of an arrested or detained person shall be informed immediately of his or her arrest or detention."

#### Article 34

"Everyone is guaranteed the right to freedom of thought and speech, and to the free expression of his or her views and beliefs ..."

#### Article 62

"A person is presumed innocent of committing a crime and shall not be subjected to criminal punishment until his or her guilt is proved through the process of law and established by a court verdict of guilty ..."

#### Article 63

"A person shall not bear responsibility for refusing to testify or to explain anything about himself or herself, members of his or her family or close relatives in the degree determined by law ..."

### 2. Criminal Code of Ukraine

#### Article 191. Misappropriation, embezzlement or conversion of property by malfeasance

"1. Misappropriation or embezzlement of somebody else's property by a person to whom it was entrusted ...

2. Misappropriation, embezzlement or conversion of property by malfeasance ...

3. Any such actions as provided for by paragraph 1 or 2 of this Article, if repeated or committed by a group of persons [acting] upon their prior conspiracy, shall be punishable by restraint of liberty for a term of three to five years, or imprisonment for a term of three to eight years, with a prohibition on the right to occupy certain positions or engage in certain activities for a term of up to three years.

4. Any such actions as provided for by paragraphs 1, 2 or 3 of this Article, if committed in respect of a large amount ..."

criminal case or to pursue criminal activities, and in order to ensure the enforcement of procedural decisions.

Preventive measures shall be imposed where there are sufficient grounds to believe that the suspect, accused, defendant or convicted person will attempt to abscond from the investigation and the court, or if he or she fails to comply with procedural decisions, or obstructs the establishment of the truth in the case or pursues criminal activities.

If there are insufficient grounds for the imposition of preventive measures, the suspect, accused or convicted person shall sign a written statement undertaking to appear upon notification by the inquirer, investigator, prosecutor or the court, and shall also undertake to notify them of any change in his place of residence.

If a preventive measure is applicable to a suspect, he or she shall be charged within ten days from the time of imposition of the measure. In the event that the indictment is not issued within that time, the preventive measure shall be annulled."

### Article 150
### Circumstances to be taken into account in choosing a preventive measure

"In resolving the issue of imposing a preventive measure, in addition to the circumstances specified in Article 148 of this Code, such circumstances as the gravity of the alleged offence, the person's age, state of health, family and financial status, type of employment, place of residence and any other circumstances relating to the person shall be taken into consideration."

### Article 151
### Written undertaking not to abscond

"A written undertaking not to abscond is a written commitment by a suspect or an accused not to leave his or her place of permanent residence or temporary address without the permission of the investigator.

If the suspect or accused breaches this written undertaking not to abscond, it may be replaced by a more stringent preventive measure. The suspect or the accused shall be informed about this upon giving the written undertaking not to abscond."

### Article 218 (in force at the material time)
### Informing the accused of the termination of the investigation of the case and allowing him to study the materials in the case file

"After deciding that the evidence collected in the case is sufficient to warrant an indictment, and after complying with the terms of Article 217 of this Code, the investigator shall inform the accused that the investigation of his case has ended and that he has the right to get acquainted with all of the materials in the case file personally and/or with the assistance of counsel...

If the accused has not shown any interest in familiarising himself with the materials of the case file with the participation of counsel, he shall be personally provided with all of the materials in the case file for familiarisation. In the course of this familiarisation process, the accused has the right to make extracts (to copy in writing) and to lodge motions. The investigator must allow all accused persons, even if there are several in one case, to familiarise themselves with all the materials in the case file ...

... Preliminary investigation materials presented for familiarisation shall be filed and numbered. During the presentation of the materials of the pre-trial investigation, the investigator shall be obliged to provide the accused, upon request of the latter, with a duly certified copy of the list of the materials in the case file...

The time afforded to the accused and his counsel for familiarisation with all materials in the case file shall not be limited."

## COMPLAINTS

Under Article 5 § 1 (b) and (c) of the Convention, the applicant complains that his arrest and the decision on his detention were arbitrary and not in accordance with law, reiterating the reasoning of his appeal against the decision of 27 December 2010.

The applicant complains under Article 5 § 2 of the Convention that he was not informed about the reasons for his arrest.

He further complains under Article 5 § 3 that the decision on his detention was not substantiated and that he was punished for exercising his Constitutional rights not to make self-incriminating statements, to be considered innocent until proved guilty and to hold an opinion.

The applicant lastly complains under Article 6 §§ 1, 2 and 3 (a) and (b) of the Convention that he and his lawyer were not informed in advance about the subject of the court hearing concerning the preventative measure applied to him and were not given time and facilities to prepare his defence.

## **QUESTIONS TO THE PARTIES**

1. Did the applicant's deprivation of liberty during the period between 26 and 27 December 2010 fall within paragraphs (b) or (c) of Article 5 § 1?

2. Was the applicant deprived of his liberty in breach of Article 5 § 1 of the Convention? In particular, was the applicant's detention free of arbitrariness and was it based on law given that the arguments of the domestic authorities for the applicant's detention referred to his unwillingness to refrain from exercising his rights and freedoms guaranteed by the Constitution and that the authorities decided to change the preventive measure after the investigative actions in the criminal case had been already completed? Was the applicant's detention applied for a purpose other than those envisaged by Article 5, contrary to Article 18 of the Convention given the applicant's active participation in the political life in Ukraine and his opposition to the Government?

3. Was the applicant informed promptly of the reasons for his arrest, as required by Article 5 § 2 of the Convention?

4. Was the applicant brought before a judge or other officer authorised by law to exercise judicial power, as required by Article 5 § 3 of the Convention? Was the procedure before the Pechersky District Court on 27 December 2010 in conformity with Article 5 § 3 of the Convention?

5. Did the applicant have at his disposal an effective procedure by which he could challenge the lawfulness of his detention, as required by Article 5 § 4 of the Convention? Was the procedure by which the applicant sought to challenge the lawfulness of his pre-trial detention in conformity with Article 5 § 4 of the Convention?

Exhibit 83



Українська | Русский | English

search

  

About KhPG | Forum | Contacts | Subscribe for news

login | registration | forgot the password

Today 19.12.2011 04:03
(by Kyiv time)

Navigation

    

» Home

**Monthly bulletin
Prava Ludyny (Human rights)**

» Topics
» Political persecutions in modern Ukraine
» Investigative Journalism

Research

» The constitution and human rights
» Against torture and ill-treatment
» The right to liberty and security
» The right to a fair trial
» The right to privacy
» Access to information
» Freedom of expression
» Freedom of peaceful assembly
» Prevention of discrimination and inequality
» Prisoners' rights
» The Security service in a constitutional democracy
» Analysis of the human rights situation in Ukraine
» Human rights and civil society
» History of the dissident movement in Ukraine

» Publications
» Campaigns
» Archives

Perio   Prev   Topic   **Politics and human rights**

## More arrests from Tymoshenko's circle

26.12.10 | www.bbc.co.uk

print version »

The Prosecutor General asserts that they are not only going for opponents, but representatives of the current regime. The latest arrest on Friday was of one of the heads of the State Customs Service, Viktor Bondar, who under President Yushchenko was Minister of Transport, and then headed the Dnipropetrovsk Regional State Administration.

The Prosecutor General, Viktor Pshonka, at a press conference in Kyiv offices boasted that a member of the current regime had been arrested and a criminal investigation started. He was responding to criticism from journalists that the Prosecutor's Office was being selective in finding misuse by officials and only seeking potential criminals among its opponents.

Pshonka said that Viktor Bondar had been summoned and arrested also with regard to misuse for motives of personal gain, but did not specify what position he had occupied when the actions were allegedly committed.

Later he informed that the criminal investigation had been initiated "for abetting the deliberate destruction of property belonging to somebody else". Bondar himself, who was phoned by journalists, said that he was at the Prosecutor General's Office giving evidence, but knew nothing of any arrest. He said that the criminal case was an old one which had long been closed. He said it was "totally trumped up".

Bondar occupied several high-ranking positions when Yushchenko was President, but he was dismissed from his post as Dnipropetrovsk Governor on 4 February (i.e. shortly before the second round of Presidential elections – translator) after he openly supported Tymoshenko during the first round of the elections.

He joined Yanukovych's team on 28 May 2010, with the post (of seventh Deputy to the Head of the Customs Service) being specially created by the Cabinet of Ministers .

Analysts believe it possible that the regime is trying to target such new people from the former regime to prove their relentlessness in fighting corruption in their own ranks. Another possibility is that they hope to get testimony out of Bondar against the former Prime Minister.

It was announced also that Tetyana Slyuz, who under Prime Minister Tymoshenko headed the State Treasury has been declared wanted for questioning. Pshonka's predecessor, Oleksandr Medvedko, had already announced that a criminal investigation had been initiated over alleged misuses by State Treasury officials. The first Deputy Head, Tetyana Hrytsun has been remanded in custody. The charge is that the officials during the period from October 2009 to January 2010 gave instructions to their subordinates to not pay tender deposits of 800 million UAH to the companies Nortima and Frunze –Flora, bidding in the tender for the privatization of the Odessa Port Factory. The former Chief Accountant of Naftohaz, Maria Kushnir whom a Russian court has also said can be extradited to Ukraine is also wanted for questioning.

Yulia Tymoshenko is going for questioning almost every day.

She is accused of having used the money received from sale of Kyoto Protocol carbon credits to pay pensions, and not for environmental programmes.

At present the former Head of the Customs Service, Makarenko and ex-Deputy Head of Naftohaz, Didenko are behind bars. Minister in Tymoshenko's government, Danylyshyn is being held in custody in the Czech Republic. Yanukovych's regime is seeking his extradition.

The opposition has called the arrests political persecution aimed at destroying opponents. On 24 December 32 members of the Ukrainian intelligentsia published an open appeal to the

President demanding a stop to "political persecution of the leader of Batkivshchyna, Yulia Tymoshenko.

Among the signatories are Ivan Dzyuba, Levko Lukyanenko, Yury Shcherbak, Maria Matyus and Yury Andrukhovych,

"We are standing today on the threshold of times when all that we went through in the XX century is beginning to repeat itself. There is again rule of one party, there is political pressure on society and the media, the opposition is persecuted and lawlessness and corruption are rampant", the appeal reads.

Slightly abridged from the BBC Ukrainian Service report

see also:

• On the detention in custody of lawyer Yevhen Korniychuk
• Lutsenko to remain behind bars
• The Economist: Concern over developments in Belarus and Ukraine
• Political repression
• Tax Code Protesters' Maidan dispelled the hypnotic fear of the regime
• Selective Justice spells the End of Law
• Myroslav Marynovych: There is an element of political repression
• U.S. Government Statement on Investigation of Ukrainian Opposition Politicians
• New arrest of Ukrainian official and another change against Yury Lutsenko
• Human Rights Ombudsperson calls Ukraine leader in mass use of arrest
• Human rights concerns over prosecutions of former government officials
• France disturbed by events in Ukraine
• Prosecution accuses Lutsenko over press interviews
• Further (scant) information on latest arrest of former government member
• Former Minister of Internal Affairs, Yury Lutsenko, arrested
• Search underway of an opposition political party
• New Prosecution Style: Blame the Victims
• Criminal prosecution initiated against another member of Tymoshenko's Government
• Selective criminal prosecutions are the hallmark of an undemocratic regime



© 1999-2011 khpg.org    created by Freelance Internet Studio
The website is created with assistance of the International Renaissance Foundation and National Endowment for Democracy (USA)

For using of materials from the site, reference to the information source is obligatory

# Exhibit 84

# KyivPost

INDEPENDENCE. COMMUNITY. TRUST

Former Acting Chairman of the State Committee of Ukraine for the State Material Reserve Vital into custody.

**Former Acting Head of State Reserve Committee Nikitin taken into custody**

Feb 1 at 19:25 | Interfax-Ukraine

Shevchenkivsky District Court of Kyiv has ruled that former Acting Chairman of the State Comr for the State Material Reserve Vitaliy Nikitin be taken into custody.

On Jan. 31, Shevchenkivsky District Court of Kyiv ruled that Nikitin be taken into custody as a as part of the investigation into a criminal case on the embezzlement of over Hr 7 billion of public funds, including misspent assets discovered by organizations d                                            -2009 and in the first quarter of 2010, the press se Security Service of Ukraine reported on Tuesday.

He is being charged with embezzling Hr 243 million by using a chain of subordinate enterprises for the acquisition of 22,150 tonnes of sugar for Committee. The SBU Main Investigative Directorate is probing the criminal case opened under Article 191 part five of the Ukrainian Penal Co

Nikitin was appointed as deputy head of the State Reserve Committee by then prime minister Yulia Tymoshenko on Feb. 6, 2008. On April 7, sacked by Prime Minister Nikolai Azarov. The Verkhovna Rada's legislative base contains no document stating the period in which Nikitin was Committee.

Web links to Kyiv Post material are allowed provided that they contain a URL hyperlink to the www.kyivpost.com material and a maximum extract of the story. Otherwise, all materials contained on this site are protected by copyright law and may not be reproduced without the pri of Public Media at news@kyivpost.com

All information of the Interfax-Ukraine news agency placed on this web site is designed for internal use only. Its reproduction or distribution i prohibited without a written permission of Interfax-Ukraine.

Design & Development by MEMO.UA