UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                     :

YULIA TYMOSHENKO, and JOHN DOES 1    :
through 50, on behalf of themselves and all of
those similarly situated,                                :

                          Plaintiffs,            :        11-CV-2794 (KMW)
                                                :        OPINION & ORDER
              -against-                        :

DMYTRO FIRTASH, et al.,                       :

                          Defendants.        :
------------------------------------------------------------X

WOOD, U.S.D.J.:

      Former Ukrainian Prime Minister Yulia Tymoshenko and John Does 1 through 50 (collectively, "Plaintiffs") bring this action for alleged violations of Plaintiffs' human rights. Plaintiffs' Amended Complaint ("AC") alleges that Defendants—a group of American and foreign individuals and corporations—violated the Alien Torts Statute ("ATS"), 28 U.S.C. § 1350, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and various state laws. Plaintiffs seek damages and a declaration that the Ukrainian practice of detaining Plaintiffs for prolonged periods violates international law.

      Defendant RosUkrEnergo AG ("RUE") has moved to dismiss the AC, claiming that this Court lacks personal jurisdiction over RUE. [Dkt. No. 56]. For the following reasons, the Court GRANTS RUE's motion to dismiss.

I.  **RELEVANT BACKGROUND**

The AC alleges the following.  RUE is a company registered and headquartered in Switzerland.  RUE is owned by one company and two individuals (a Russian gas company owns 50% of RUE;  Defendant Dmytro Firtash owns 45% of RUE through his holding company, Defendant Centragas Holding AG ["Centragas]; and Firtash's associate, Ivan Fursin owns 5% of RUE through Centragas).  (AC ¶ 83).  According to the AC, Firtash, "although not a majority shareholder, effectively controls RUE's operations."  (AC ¶ 31).  Plaintiffs also allege that RUE has "possible connections with organized crime," (AC ¶ 83), and has used "corrupt business dealings and illegal kickbacks" to secure a position as an intermediary in the Ukrainian natural gas trade, (AC ¶ 86).  As part of its intermediary role, RUE was paid from two New York bank accounts belonging to Naftogaz, a state-owned Ukrainian natural gas monopoly.  (AC ¶ 32).

Plaintiffs' allegations against RUE arise from RUE's alleged role in a conspiracy, headed by Firtash, to punish Tymoshenko and her political allies for their actions during her tenure as Prime Minister of Ukraine.  In 2009, Tymoshenko renegotiated Ukraine's natural gas contracts with Russia, eliminating RUE as an intermediary (which resulted in a significant financial loss for RUE).  (AC ¶ 141).  Firtash stated publicly that the renegotiated gas contracts were "criminal and the 'most stupid contract[s] in Ukraine's history.'"  (AC ¶ 143).

Following a political campaign financed by Firtash, (AC ¶ 147),Viktor Yanukovich was elected President of the Ukraine in February 2010.  (AC ¶ 153).  With this change in leadership, many of Firtash's and RUE's allies returned to power.  (AC ¶¶ 147-48).  Firtash used his connections to void the gas contracts negotiated during Tymoshenko's administration; to restore RUE's role as an intermediary in the Ukrainian gas trade; and to obtain a $3.5 billion arbitration award in RUE's favor, payable by the Ukrainian government.  (AC ¶¶ 154-55).

Plaintiffs allege that RUE, in order to put its funds "outside the jurisdiction of Ukrainian courts," invested a "sizable portion" of the aforementioned arbitral award, and its profits, in a group of shell companies within the United States. (AC ¶ 95). The shell companies were affiliated with Firtash and were allegedly used "to launder money in the United States and abroad under the guise of investing in legitimate business ventures." (AC ¶ 100). These companies allegedly engaged in several transactions in the United States, including real estate investments, to launder Defendants' money. (*See* AC ¶¶ 95-134) Although Plaintiffs' brief states that RUE engaged in these transactions, the AC does not state any fact that would suggest that RUE controlled, directed, or had knowledge of the U.S. shell companies' actions. (*See* Pls.' Mem. in Opp'n 10-12 [Dkt. No. 70]).

As retribution for eliminating RUE from the Ukrainian natural gas trade, the Yanukovich government—allegedly incentivized by illegal kickbacks from Firtash and RUE, (AC ¶ 93)—has filed criminal charges against Tymoshenko and other former government officials. (AC ¶¶ 159-60). Tymoshenko has been subjected to a politically-motivated "show trial," (AC ¶ 78), and has been incarcerated since August 2011. (AC ¶¶ 193-96).

Plaintiffs seek compensatory, punitive, and treble damages, as well as a declaration that "the state practice of arbitrarily detaining Plaintiffs for prolonged periods is a violation of international law." (AC ¶ 93). RUE now moves to dismiss the AC pursuant to Rule 12(b)(2) for lack of personal jurisdiction.[1] [Dkt. No. 57].

## II.     LEGAL STANDARD

On a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d

---

[1] RUE makes other arguments to support dismissal. (*See* Def. RUE's Mem. in Supp. 14-24 [Dkt. No. 57]). However, because the Court's resolution of personal jurisdiction is dispositive, it does not address these arguments.

560, 566 (2d Cir. 1996). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith ... legally sufficient allegations of jurisdiction, *i.e.*, by making a *prima facie* showing of jurisdiction." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (internal quotation marks and citations omitted). A prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). District courts have "considerable procedural leeway" in deciding whether or not a plaintiff has made a prima facie showing of jurisdiction, *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981), but must construe all allegations "in the light most favorable to the plaintiff" and resolve all doubts in the plaintiff's favor, "notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

### III.   PERSONAL JURISDICTION PURSUANT TO RULE 4(K)(2)[2]

Federal Rule of Civil Procedure 4(k)(2) permits a federal court to exercise personal jurisdiction over a defendant for claims arising under federal law "if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). "Rule 4(k)(2) is designed to fill a gap in the enforcement of federal law for courts to exercise personal jurisdiction over defendants having sufficient contacts with the United States to justify the application of United States law, but having insufficient contact with any single state to support jurisdiction under state long-arm legislation." *Daventree Ltd. v. Republic of Azer.*, 349 F. Supp.

---

[2] In the AC, Plaintiffs asserted that the Court has personal jurisdiction over "all parties" "by virtue of their residence in New York, their business and/or tortious activities in this state, or by operation of Fed. R. Civ. P. 4(k)(1-2)." (AC ¶ 45). In their briefing, however, Plaintiffs assert jurisdiction over RUE only under Rule 4(k)(2). (*See* Pls.' Mem. of Law in Opp'n 7-13 [Dkt. No. 70]). Consequently, the Court will only consider whether jurisdiction exists pursuant to Rule 4(k)(2).

2d 736, 760 (S.D.N.Y. 2004) (Stein, J.) (quoting Fed. R. Civ. P. 4(k)(2), advisory comm. note (1993)). Thus, to establish personal jurisdiction pursuant to Rule 4(k)(2), a plaintiff must show that (1) the plaintiff's cause of action arises under federal law; (2) the defendant is not subject to the jurisdiction of any state; and (3) the exercise of personal jurisdiction over the defendant is consistent with the United States Constitution and laws. *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008).

The first two elements are not in dispute; Plaintiffs' claims arise out of federal law, and both parties concede that RUE is not subject to personal jurisdiction in New York or any other state. (Pls.' Mem. of Law in Opp'n 8; Def.'s Mem. in Supp. 2). The third element requires the Court's exercise of personal jurisdiction to comport with Fifth Amendment due process. *Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202, 207 (2d Cir. 2003). "Due process permits a court to exercise personal jurisdiction over a non-resident where the maintenance of the suit would not 'offend traditional notions of fair play and substantial justice.'" *Porina*, 521 F.3d at 127 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The requirements of due process are met if: (1) the defendant "has sufficient minimum contacts to justify the exercise of personal jurisdiction," *id.*, and (2) exercising jurisdiction "is reasonable under the circumstances of the particular case." *Metro. Life*, 84 F.3d at 568. These elements interact: "the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994)). The Court finds that RUE does not have sufficient contacts with the United States to justify the exercise of personal jurisdiction, and that, in any event, the exercise of such jurisdiction would be unreasonable.

### A. <u>Minimum Contacts</u>

There are two methods for establishing constitutionally sufficient minimum contacts. First, *specific* jurisdiction over a non-resident defendant exists "'in a suit arising out of or related to the defendant's contacts with the forum.'" *Porina*, 521 F.3d at 127 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). Second, where the suit is not related to the defendant's contacts with the forum, *general* jurisdiction over a non-resident exists where the defendant's "general business contacts with [the forum] were sufficiently 'continuous and systematic' to justify subjecting it to suit within the jurisdiction." *Metro. Life*, 84 F.3d at 565. Plaintiffs do not argue that their claims arise out of RUE's contacts with the United States. (*See* Pls.' Mem. in Opp'n 9). Consequently, Plaintiffs "must satisfy the 'more stringent minimum contacts test' for general jurisdiction cases, by showing that [RUE] had 'continuous and systematic general business contacts' with the United States." *Porina*, 521 F.3d at 128 (quoting *Helicopteros*, 466 U.S. at 416). As a "minimum prerequisite to the assertion of jurisdiction," constitutional minimum contacts also require "some act by which the defendant *purposefully* avails itself of the privilege of conducting activities within the forum." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

RUE claims, and Plaintiffs do not contest, that it has "no offices, employees, bank accounts or property in . . . the United States[,] nor does it solicit or do business here." (RUE Mem. in Supp. 2-3). Plaintiffs allege only two contacts between RUE and the United States. First, Plaintiffs claim that Naftogaz used its New York bank accounts to pay RUE some of the proceeds from its natural gas contracts in Ukraine. (AC ¶ 32). Second, Plaintiffs allege that Firtash, who allegedly controls RUE, invested some of RUE's profits in a host of "shell companies" based in the United States. (AC ¶ 96). These shell companies then "laundered"

those funds by investing the money in a series of real estate transactions in the United States, although the real estate projects were never completed. (AC ¶¶ 96, 113-35).

Examining these contacts together in the light most favorable to Plaintiffs, the Court cannot conclude that RUE "purposefully availed" itself of the privilege of conducting business in the United States. Indeed, the AC does not even allege that *RUE* invested in U.S. shell companies; rather, it alleges that *Firtash* invested RUE's profits, presumably on its behalf. (AC ¶ 96). Assuming this contact can be attributed to RUE, simply receiving money from a foreign entity's United States account and investing in independent United States-based companies is not enough for the Court to assert personal jurisdiction over RUE. *See Transatlantic Shiffahrtskontor GmBh v. Shanghai Foreign Trade Corp.*, 996 F. Supp. 326, 335 (S.D.N.Y. 1998) (Cedarbaum, J.) ("The mere agreement to pay funds to a bank account in New York does not establish constitutionally sufficient minimum contacts with New York."); *Helicopteros*, 466 U.S. at 416 (holding that the fact that foreign defendant accepted payment from a Texas bank "is of negligible significance for purposes of determining whether [Defendant] had sufficient contacts in Texas"). Although the companies in which RUE purportedly invested may have engaged in more extensive activities within the United States, the AC fails to allege that RUE controlled, directed, or even knew about these acts. Moreover, even if RUE were more involved in these corporations' investment decisions, that would not, in and of itself, suffice to show that RUE has "the requisite continuous and systematic contact" with the United States. *In re Terrorist Attacks*, 718 F. Supp. 2d 456, 471 (S.D.N.Y. 2010) (Daniels, J.); *cf. Jazini*, 148 F.3d at 148 (noting that presence of corporate subsidiary can establish parent's presence only if it is an "agent" or a "mere department of" the foreign parent). Absent more than the threadbare

connections pled in the AC, Plaintiffs cannot meet the "stringent" test for minimum contacts general jurisdiction demands. *Metro. Life*, 84 F.3d at 568.

Alternatively, Plaintiffs argue that the Court should examine the conduct of RUE's co-conspirators in order to establish personal jurisdiction over RUE. (Pls.' Mem. in Opp'n 10). "Whether the forum contacts of an in-state actor may be attributed to an out-of-state co-conspirator for due process purposes or whether the latter must independently satisfy the 'minimum contacts' requirement is open to question." *Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95, 127 (E.D.N.Y. 2000) (collecting cases). In this Circuit, decisions that have attributed the contacts of a defendant's co-conspirators have done so by applying New York state's long-arm statute under Rule 4(k)(1), not under Rule 4(k)(2). *E.g. Daventree*, 349 F. Supp. 2d at 765; *Simon*, 86 F. Supp. 2d at 127.[3] However, although "[w]hether a plaintiff can establish personal jurisdiction over a defendant pursuant to Rule 4(k)(2) through the imputation of contacts of that defendant's putative co-conspirators with the United States has not been [decisively] addressed," *Daventree*, 349 F. Supp. 2d at 765, the use of this conspiracy theory has been widely criticized by courts and scholars. *See, e.g., Davis v. A.& J. Elec.*, 792 F.2d 74, 76 (7th Cir. 1986) (holding that there is no "independent federal 'civil co-conspirator' theory of personal jurisdiction."); Ann Althouse, *The Use of Conspiracy Theory to Establish in Personam Jurisdiction: A Due Process Analysis*, 52 Fordham L. Rev. 234 (1983).

---

[3] Further, "[t]he analysis of those New York courts that have addressed the constitutionality of conspiracy jurisdiction has centered on the defendant's *awareness* of the commission of [co-conspirator's] acts pursuant to" a conspiracy committed within the forum state. *Simon*, 86 F. Supp. 2d at 127; *see also Andre Emmerich Gallery, Inc. v. Segre*, No. 96 Civ. 889, 1997 WL 672009, at *6 (S.D.N.Y Oct. 29, 1997) (Haight, J.) (holding that defendant's knowledge that a forged artwork would be sold to a New York art dealer, thus affecting the New York art market, created enough of a forum connection to satisfy due process). Even if the Court were to apply the New York long-arm statute' attribution theory to Rule 4(k)(2), the Court finds that Plaintiffs have failed to demonstrate either that the conspiracy took place in the United States or that RUE was aware of any overt acts committed in furtherance of a conspiracy in the United States.

In light of these considerations, the Court declines to consider the contacts of RUE's co-conspirators to establish personal jurisdiction over RUE and instead focuses on RUE's individual contacts—which, as discussed above, are insufficient to confer personal jurisdiction.

### B. Reasonableness

Even if RUE's contacts with the United States were constitutionally sufficient, the Court nonetheless finds that the exercise of personal jurisdiction over RUE would be unreasonable. A defendant's contacts must be considered in light of other factors to determine whether the assertion of personal jurisdiction would be "reasonable." The exercise of personal jurisdiction must comport with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need to show in terms of unreasonableness to defeat jurisdiction." *Metro. Life*, 84 F.3d at 569 (quoting *Ticketmaster*, 26 F.3d at 210). In this analysis, the defendant bears the burden of demonstrating "that the assertion of jurisdiction in the forum will make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent." *SEC v. Softpoint, Inc.*, No. 95 Civ. 2951, 2001 WL 43611, at *5 (S.D.N.Y. Jan. 18, 2001) (Lynch, J.) (quoting *Burger King*, 471 U.S. at 478) (internal quotation marks omitted).

The reasonableness inquiry is an equitable balancing test that directs the Court to consider five factors: (1) "the burden that the exercise of jurisdiction will impose on the defendant;" (2) "the interests of the forum state in adjudicating the case;" (3) "the plaintiff's interest in obtaining convenient and effective relief;" (4) "the interstate judicial system's interest in obtaining the most efficient resolution of the controversy;" and (5) "the shared interest of the

states in furthering social substantive policies." *Metro. Life*, 84 F.3d at 568 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 113-14 (1987)).

Although the defendant bears a heavy burden to show that the exercise of jurisdiction would be unreasonable, *see SEC v. Morton*, No. 10 Civ. 1720, 2011 WL 1344259, at *12 (S.D.N.Y. Mar. 31, 2011) (Dolinger, Mag.), courts have routinely found jurisdiction to be unreasonable where neither party has ties to the forum, *see, e.g.*, *Asahi*, 480 U.S. at 106; *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 733 (S.D.N.Y. 2010) (Keenan, J.). Given that neither party in the instant case has a connection to the United States, nor have Plaintiffs alleged anything more than minimal contact between RUE and the United States, the Court finds that asserting jurisdiction over RUE would "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

First, exercising jurisdiction would impose a substantial burden on RUE—a Swiss corporation that does no business in the United States—by forcing RUE to defend a suit in New York. *See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999) (holding that a Japanese corporation would face a substantial burden on if forced to defend a suit in New York); s*ee also Asahi*, 480 U.S. at 114 (noting that courts must give "significant weight" to the "unique burdens placed upon one who must defend oneself in a foreign legal system"); *Mega Tech Int'l v. Al-Saghyir Establishment*, No. 96 Civ. 8711, 1999 WL 269896, at *6 (noting that despite the "conveniences of modern communication and transportation," it would still be both costly and cumbersome for Saudi Arabian defendant to litigate in New York). Nor have Plaintiffs, all of whom reside in Ukraine, alleged that this forum is any more convenient to them. *See Tamam*, 677 F. Supp. 2d at 733.

The Court finds the second factor to be the most important consideration here, because the United States has a very limited interest in adjudicating this case. Both RUE and Plaintiffs are foreign residents, and all of the conduct underlying Plaintiffs' claims occurred abroad. In cases where the plaintiff is not a resident of a particular forum, "the forum's legitimate interests in the dispute have considerably diminished." *In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 431 (S.D.N.Y. 2009) (Scheindlin, J.) (internal quotation marks omitted). Although the United States does have an interest in stopping human rights abuses, this interest is minimal where, as here, both parties are foreign nationals litigating a dispute that took place entirely in the Ukraine. *See Tamam*, 677 F. Supp. 2d at 733; *Int'l Hous. Ltd. v. Rafidain Bank Iraq*, 712 F. Supp. 1112, 1119 (S.D.N.Y. 1989) (Ward, J.). This lack of interest weighs against the exercise of jurisdiction.

To the extent that Plaintiffs' claims involve violations of Ukrainian law, federal courts are ill-equipped to assess such a claim. *See Porina v. Marward Shipping Co.*, No. 05 Civ. 5621, 2006 WL 2465819, at *24 (S.D.N.Y. 2006) (Patterson, J.), *aff'd*, 521 F.3d 122 (2d. Cir 2008). Plaintiffs may also have difficulty obtaining effective relief from this forum. Although the Court would have jurisdiction to enforce any judgment entered against a foreign plaintiff, RUE has no known assets in the United States, and enforcing any monetary judgment could require further litigation. *See, e.g.*, *Eitzen Bulk A/S v. Bank of India*, 827 F. Supp. 2d 234 (S.D.N.Y. 2011) (Hellerstein, J.). This factor therefore strongly weighs against a finding of jurisdiction.

Fourth, in evaluating the interstate judicial system's interest in obtaining the most efficient resolution, the Court considers the location of likely witnesses and evidence. *Metro. Life*, 84 F.3d at 574. Most of the relevant evidence and witnesses in this case are located in

Ukraine, and are beyond the Court's subpoena power. *Metro. Life*, 84 F.3d at 574-75. This factor thus also strongly weighs against the exercise of jurisdiction.

Finally, the Court finds that the interest in promoting substantive social policies weighs somewhat in Plaintiffs' favor. As Plaintiffs have argued, the United States does have a policy interest in protecting human rights. However, when considering reasonableness, courts must consider the procedural and substantive policies of other nations in deciding whether to assert jurisdiction, and take "great care and reserve" when extending the U.S. concept of personal jurisdiction into the international field. *Asahi*, 480 U.S. at 107. In this case, it would be unreasonable for the Court to intrude on matters that are wholly located in Ukraine.

In light of these factors, the Court finds the exercise of jurisdiction over RUE to be unreasonable.

### IV. JURISDICTIONAL DISCOVERY

Plaintiffs also request the opportunity to conduct jurisdictional discovery. (Pls.' Mem. in Opp'n 13). However, RUE argues that Plaintiffs' request should be denied because Plaintiffs have failed to allege facts to support a prima facie showing of jurisdiction. (Def.'s Mem. in Supp. 5-6).

At the jurisdictional stage, "district courts enjoy broad discretion in deciding whether to order discovery." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 811 (S.D.N.Y 2005) (Casey, J.), *aff'd*, 538 F.3d 71 (2d Cir. 2008). The failure to make out a prima facie case does not always bar jurisdictional discovery. *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 550 n.6 (2d Cir. 2007). Rather, the court should grant plaintiffs such discovery if "facts may exist" to support jurisdiction. *Marine Midland*, 664 F.2d at 904. But if the plaintiff offers only "speculations or hopes ... that further connections to [the forum] will come to light in discovery,"

the court should dismiss the complaint.  *Rosenberg v. PK Graphics*, No. 03 Civ. 6655, 2004 WL 1057621, at *1 (S.D.N.Y. May 10, 2004) (Buchwald, J.).

Here, Plaintiffs have offered no rationale as to why jurisdictional discovery is likely to elicit information connecting RUE to the United States.  (Pls.' Mem. in Opp'n 14).  Furthermore, although a prima facie showing of personal jurisdiction is not a prerequisite for obtaining jurisdictional discovery, its absence renders discovery less likely to yield useful information. *Jazini*, 148 F.3d at 186.  Finally, the fact that RUE is a foreign corporation also disfavors jurisdictional discovery .  *See id.* at 185-86 (noting that allowing jurisdictional discovery over foreign corporate defendant would be a practice that district courts have "not hitherto engaged"); *Daventree*, 349 F. Supp. 2d at 761.

## V. LEAVE TO REPLEAD

Plaintiffs argue that that the Court should grant Plaintiffs the opportunity to replead. Defendants argue that since "the problems with the Plaintiffs' claims are substantive … repleading would be futile."  (RUE Reply Mem. 8 [Dkt. No. 73]).

The question of whether to allow Plaintiffs to replead is a matter of this Court's "sound discretion."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  Leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead.").  Leave to replead should be denied, however, if it would be futile.  *McCarthy*, 482 F.3d at 200.

The Court finds that repleading may not be futile in this case.  Plaintiffs have amended their complaint only once, and that was before RUE made its motion to dismiss.  Plaintiffs

13

should be granted leave to assert facts, if they exist, that would show that RUE has contacts with the United States such that it would be reasonable to subject it to jurisdiction here.

## VI. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant RUE's motion to dismiss Plaintiffs' claims for lack of personal jurisdiction. [Dkt. No. 56]. Plaintiffs' claims are dismissed without prejudice.

SO ORDERED.

Dated: New York, New York
       March 26, 2013

/s/_____
Kimba M. Wood
United States District Judge