```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                              :
YULIA TYMOSHENKO and JOHN DOES 1                              :
through 50, on behalf of themselves and all those             :
similarly situated,                                           :
                                                              :
                              Plaintiffs,                     :      11-CV-2794 (KMW)
                                                              :      OPINION & ORDER
             -against-                                        :
                                                              :
DMYTRO FIRTASH, et al.,                                       :
                                                              :
                              Defendants.                     :
-------------------------------------------------------------X
```

WOOD, U.S.D.J.:

Yulia Tymoshenko, former Prime Minister of Ukraine, brings this action on behalf of herself and other former officials (collectively, "Plaintiffs") for alleged violations of their human rights. Plaintiffs' Amended Complaint ("AC") asserts claims under the Alien Tort Statute ("ATS"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and state law for breach of fiduciary duty and malicious prosecution.

Defendant Nadra Bank moves to dismiss the AC pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), 12(b)(2), and 12(b)(6). For the following reasons, the Court GRANTS Nadra Bank's motion to dismiss.

I.   **RELEVANT BACKGROUND**

Because the factual background of this case is fully detailed in previous opinions, the Court provides only a summary here. *See Tymoshenko v. Firtash*, No. 11-CV-2794, 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) (Wood, J.) [Dkt. No. 79]; *Tymoshenko v. Firtash*, 2013 WL 1234821 (S.D.N.Y. Mar. 26, 2013) (Wood, J.) [Dkt. No. 78]. The following allegations, drawn

1

from the AC, are accepted as true for purposes of Nadra Bank's motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While serving as Prime Minister, Tymoshenko renegotiated Ukraine's natural gas contracts with Russia and, in doing so, eliminated RosUkrEnergo AG ("RUE") as an intermediary. (AC ¶ 9). RUE, a company in which Defendant Dmytro Firtash owns a 45% stake (AC ¶ 31), consequently suffered a "significant loss of business." (AC ¶ 9). Firtash allegedly retaliated against Tymoshenko by financing the election of her party's political opposition– including current President Viktor Yanukovych (AC ¶ 147) and by bribing Ukrainian officials to engage in "a widespread and systematic pattern of political persecution" against Plaintiffs. (AC ¶ 23). Specifically, Plaintiffs claim that they "have been arbitrarily arrested, detained, and prosecuted on unfounded, politically-motivated criminal charges in violation of international law." (AC ¶ 2)

Plaintiffs contend that this political persecution is facilitated by a complex racketeering scheme perpetuated by both American and foreign individuals and businesses (collectively, 'Defendants'). (AC ¶¶ 27-44). To transfer funds into offshore accounts and conceal illegal kickbacks to Ukrainian government officials, Firtash and other Defendants allegedly engaged in money laundering, mail fraud, and wire fraud using a "labyrinth of shell companies." (AC ¶¶ 95-96, ¶¶ 278-83). Nadra Bank is named as one of the thirty-nine companies which are allegedly part of this "labyrinth." (AC ¶ 96).

Nadra Bank is Ukraine's fifth largest bank. (AC ¶ 135). In May 2011, Firtash through a holding company, Centragas Holding AG acquired a controlling interest in Nadra Bank. (AC ¶¶ 96, 135). Subsequently, "Firtash and Centragas have used Nadra Bank to transfer unlawfully obtained proceeds . . . to bank accounts in New York and elsewhere and to Firtash [and his]

organized crime associates to be used for political bribery and other unlawful purposes." (AC ¶ 137). Plaintiffs note that, as of June 2011, Nadra Bank had roughly $500 million deposited in New York accounts. (AC ¶ 136).

Plaintiffs filed their Complaint and Amended Complaint on April 26, 2011 and December 19, 2011, respectively. The AC alleges violations of the ATS and RICO, as well as state law claims for breach of fiduciary duty and malicious prosecution. (AC ¶ 261-94). Between April and August 2012, the United States-based individuals and corporations named in the AC (collectively, the "U.S. Defendants") and Defendant RUE moved to dismiss the AC. The Court granted RUE's motion to dismiss because Plaintiffs had failed to establish personal jurisdiction over RUE, a Ukrainian corporation. [Dkt. No. 79]. The Court also granted the U.S. Defendants' motion to dismiss, holding (1) that the political persecution discussed in the AC is not actionable under the ATS because it is not "arbitrary," and (2) that Plaintiffs failed to state a claim under RICO because the alleged misconduct occurred abroad. [Dkt. No. 26].

On September 4, 2012, Defendant Nadra Bank moved to dismiss the AC pursuant to Rules 8, 9(b), 12(b)(1), 12(b)(2), and 12(b)(6). [Dkt. No. 66]. On April 22, 2013, this Court requested additional briefing from the parties regarding "the effect, if any," of the Supreme Court's recent decision in *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013), on the issues presented in Nadra Bank's motion to dismiss. [Dkt. No. 81]. Nadra Bank submitted its supplemental materials on April 29, 2013 [Dkt. No. 83], and Plaintiffs responded on May 6, 2013, [Dkt. No. 84].

## II.   LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss, a plaintiff must plead factual allegations adequate "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschcroft*, 556 U.S. at 678 (2009). The Court must accept as true all well-pleaded factual allegations in the complaint and "draw[] all inferences in the plaintiff's favor." *Allaire Corp v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotations omitted).[1] "[T]he standards for dismissal under 12(b)(6) and 12(b)(1) are substantively identical." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).

### III. DISCUSSION

#### A. Plaintiffs' ATS Claim

The ATS provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. Plaintiffs claim that Defendant government officials violated the ATS by "arbitrarily arrest[ing], detain[ing], and prosecut[ing] [them] on unfounded, politically-motivated criminal charges in violation of international law." (AC ¶ 2). This political persecution allegedly occurred "with the knowledge, consent, and material support, if not at the request, of the remaining Defendants," including Nadra Bank. (AC ¶ 2).

Nadra Bank presents several arguments in favor of its motion to dismiss, including (1) that ATS liability does not extend to corporate defendants, and (2) that Plaintiffs' claims constitute an impermissible extraterritorial application of the ATS. (*See* Def.'s Mem. of Law in Supp. 12-14 [Dkt. No. 67]). For the following reasons, the Court agrees that Plaintiffs' ATS claim must be dismissed because (1) ATS liability does not extend to corporations, including

---

[1] Nadra Bank's motion to dismiss included declarations from an expert in Ukrainian law and an official at Nadra Bank. (*See* Merezhko Decl. [Dkt. No. 69]; Kholevan Decl. [Dkt. No. 68]). Although some "materials beyond the pleadings" may be considered in resolving a motion under Rule 12(b)(1), *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004), the Court notes that its resolution of the instant motion is based upon only the AC and accompanying materials.

Nadra Bank, and (2) the presumption against extraterritorial application of the ATS forecloses Plaintiffs' claims.[2]

### 1. ATS Liability Does Not Extend to Corporations

In *Kiobel v. Royal Dutch Petroleum Co.*, the Second Circuit held that corporations are not subject to ATS liability. 621 F.3d 111, 120 (2d Cir. 2010), *aff'd on other grounds*, 133 S. Ct. 1659 (2013). Where a plaintiff seeks relief under the ATS, "jurisdiction is limited to those cases alleging a violation of an international norm that is 'specific, universal, and obligatory.'" *Id*. at 148 (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004)). After surveying a variety of sources, the Second Circuit concluded that "[n]o corporation has ever been subject to *any* form of liability (whether civil, criminal, or otherwise) under the customary international law of human rights." *Id*. The Supreme Court granted certiorari. *Kiobel v. Royal Dutch Petroleum Co.*, 132 S. Ct. 472 (2011). Although the Supreme Court affirmed the Second Circuit's decision, *id.* at 1669, the majority opinion did not address the issue of corporate liability under the ATS, *see id.* at 1662 (noting that opinion addressed only the extraterritorial application of the ATS).

Plaintiffs suggest that, because the Supreme Court did not expressly *foreclose* corporate liability, their ATS claim against Nadra Bank may proceed. (Pls.' Supp. Mem. of Law in Opp. 1 [Dkt. No. 84]). Plaintiffs' argument is misplaced. The Supreme Court affirmed the Second Circuit decision and did not rule on corporate liability under the ATS. *See Kiobel*, 133 S. Ct. at

---

[2] As indicated above, this Court—in its earlier opinion addressing the U.S. Defendants' motion to dismiss—determined that Plaintiffs' detention was not "arbitrary" and was not, therefore, an actionable ATS violation. However, the Court should not have reached the merits of the corporate defendants' claims, *see Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 155 (2d Cir.1996) ("Customarily, a federal court first resolves any doubts about its jurisdiction over the subject matter of a case before reaching the merits or otherwise disposing of the case."), but rather should have dismissed Plaintiffs' claims against corporations because, under applicable Second Circuit law, corporations could not be subject to ATS liability and the Court thus lacked subject matter jurisdiction over the corporate defendants. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 120 (2d Cir. 2010); [*see also* Dkt. No. 26, at 11 n.4]. Here, the Court considers as a threshold matter whether or not it has subject matter jurisdiction and, in so doing, takes into account the Supreme Court's intervening decision in *Kiobel*. *See* 133 S. Ct. 1659 (2013).

1669 (Kennedy, J., concurring) (noting that the majority opinion "is careful to leave open a number of significant questions regarding the reach and interpretation of the Alien Tort Statute," including the potential for corporate liability). This Court is bound by the Second Circuit decision unless and until the Supreme Court or an en banc panel of the Second Circuit unambiguously rejects its rationale.[3] *See, e.g.*, *Boyd v. AWB Ltd.*, 544 F. Supp. 2d 236, 243 n.6 (S.D.N.Y. 2008). Accordingly, because Nadra Bank is a corporation, Plaintiffs' "claim[] fall[s] outside the limited jurisdiction provided by the ATS." *Kiobel*, 621 F.3d at 120. This Court must consequently dismiss Plaintiffs' ATS claim pursuant to Federal Rule of Civil Procedure 12(b)(1).

### 2. Plaintiffs' Claim Constitutes an Impermissible Extraterritorial Application of the ATS

Even if the Supreme Court's decision left room for liability against corporate defendants, Plaintiffs' claim nonetheless fails as an impermissible extraterritorial application of the ATS. "When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869, 2878 (2010). This "reflects the 'presumption that United States law governs domestically but does not rule the world.'" *Kiobel*, 133 S.Ct. at 1664 (quoting *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 454 (2007)).

In *Kiobel*, the Supreme Court confirmed that claims arising under the ATS are subject to the presumption against extraterritoriality and, thus, limited the circumstances in which torts committed abroad may be redressed by U.S. courts. *Id.* at 1665; *see also Mohammadi v. Islamic Republic of Iran*, No. 09-1289, 2013 WL 2370594, at *15 (D.D.C. May 31, 2013) ("[T]he

---

[3] The *Kiobel* majority did refer to corporations when discussing what type of domestic contact could rebut the presumption against extraterritoriality: the Court noted that "[c]orporations are often present in many countries, and it would reach too far to say that mere corporate presence suffices." *Kiobel*, 133 S.Ct. at 1669. Because the Supreme Court does not address the liability of corporate defendants under the ATS, however, its decision does not displace the clear pronouncement of the Second Circuit.

Supreme Court [in *Kiobel*] appears to have set a very high bar for plaintiffs asserting jurisdiction under the ATS for claims arising out of conduct occurring entirely abroad."). Although the Supreme Court did note that there may be situations in which a tort committed outside the U.S. is nonetheless actionable—namely, "where the claims touch and concern the territory of the United States . . . with sufficient force to displace the presumption against extraterritorial application," *Kiobel*, 133 S. Ct. at 1669—the Court failed to provide guidance regarding what is necessary to satisfy the "touch and concern" standard, *see id.* (Alito, J., concurring) (noting that the majority's "formulation obviously leaves much unanswered").[4]

However, the Supreme Court in *Kiobel* unanimously agreed that jurisdiction under the ATS was unavailable to the plaintiffs in that case.[5] *Id.* In *Kiobel*, Nigerian nationals accused foreign corporations of aiding and abetting ATS violations committed by the Nigerian government. *Kiobel*, 133 S. Ct. at 1662-63. Each of the alleged international law violations—including torture and arbitrary arrest and detention—occurred in Nigeria. *Id.* Defendants' sole domestic presence "consist[ed] of an office in New York City (actually owned by a separate but affiliated company)." *Id.* at 1677 (Breyer, J., concurring). Concluding that "all the relevant conduct took place outside the United States," the Supreme Court held that the domestic contacts at issue were insufficient to rebut the presumption against extraterritorial application of the ATS.

---

[4] Although the majority failed to adopt a particular test regarding the "touch and concern" standard, the Court notes that Plaintiffs' claim would fail under either formulation proposed by the concurring opinions. *See Kiobel*, 133 S. Ct. at 1670 (Alito, J., concurring) ("[A] putative ATS cause of action will fall within the scope of the presumption against extraterritoriality—and will therefore be barred—unless the domestic conduct is sufficient to violate an international law norm that satisfies *Sosa*'s requirements of definiteness and acceptance among civilized nations."); *id.* at 1671 (Breyer, J., concurring) (approving jurisdiction under the ATS "where (1) the alleged tort occurs on American soil, (2) the defendant is an American national, or (3) the defendant's conduct substantially and adversely affects an important American national interest").

[5] Subsequent cases have thus focused on the facts of *Kiobel* in assessing whether a particular ATS claim "touches and concerns" the United States. *See, e.g.*, *Ahmed-Al-Khalifa v. Salvation Army*, No. 3:13cv289–WS, 2013 WL 2432947, at *2 (N.D. Fla. June 3, 2013); *Mwani v. Bin Laden*, No. 99–125 (JMF), 2013 WL 2325166, at *4 (D.D.C. May 29, 2013).

*Id.* at 1669.

The facts of this case closely mirror those of *Kiobel*. Here too, Plaintiffs are citizens of a foreign country, Nadra Bank is a foreign corporation, and the tortious conduct at issue—arbitrary arrest and detention—took place on foreign soil. Although the defendant in *Kiobel* maintained an office in New York, Nadra Bank's presence in the United States is even less substantial—merely the use of New York bank accounts. Given these facts, the Court concludes that Plaintiffs' ATS claim against Nadra Bank is impermissibly extraterritorial and must therefore be dismissed.

### B. Plaintiffs' RICO Claim

According to the AC, Defendants—including Nadra Bank—comprised a "racketeering enterprise" which engaged in money laundering, mail fraud, and wire fraud in the United States. (AC ¶¶ 278, 281). These racketeering activities allegedly allowed Defendants to conceal illegally-obtained funds and unlawful kickbacks paid to Ukrainian government officials. (AC ¶ 278). As a result of the "baseless, politically-motivated charges" brought against them by the bribed officials (AC ¶ 279), Plaintiffs suffered injury which, they contend, entitles them to civil remedies under 18 U.S.C. § 1964. (AC ¶ 284).

In *Norex Petroleum Ltd. v. Access Industries, Inc.*, the Second Circuit determined that, because "RICO is silent as to any extraterritorial application," the presumption against extraterritoriality applies to RICO claims. 631 F.3d 29, 32 (2d Cir. 2010) (internal quotation marks omitted). In this Court's prior opinion, it analyzed the racketeering enterprise and activities alleged in the AC and concluded that Plaintiffs had failed to state a domestic RICO claim. *See Tymoshenko*, 2013 WL 1234821, at *12-13 ("The scheme alleged here—where both the victims and victimizers are foreign and the alleged perpetrators committed no wrongdoing in the United States, but merely allegedly invested funds in U.S.-based corporations—is not sufficient to

state a claim for a domestic RICO violation.") Because Plaintiffs' factual allegations regarding the racketeering scheme are unchanged, Plaintiffs' RICO claim against Nadra Bank fails as an extraterritorial application of the statute. Accordingly, the RICO claim against Nadra Bank is dismissed.

### C. Supplemental Jurisdiction Over State Law Claims

28 U.S.C. § 1331 confers jurisdiction on this court to hear civil actions arising under the ATS, RICO, and other federal laws and, in this case, provides the only available basis for subject matter jurisdiction. Because the Court has dismissed Plaintiffs' ATS and RICO claims, 28 U.S.C. § 1367 prohibits the Court from exercising supplemental jurisdiction over Plaintiffs' remaining claims against Nadra Bank. As a result, Plaintiffs' state law claims are also dismissed.

### D. Leave to Replead

Plaintiffs request leave to replead should the Court find the AC insufficient. Plaintiffs, having amended their pleading once as of right, [Dkt.No. 23], can amend their complaint further only by leave of the Court. *See* Fed. R. Civ. P. 15(a). Although Rule 15(a) provides that such "leave shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), "it is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003). Because the present law of this Circuit forecloses corporate liability for ATS violations, any efforts to amend the AC to reconfigure Plaintiffs' ATS claim against Nadra Bank would be "futile." *Id.* Accordingly, Plaintiffs are denied leave to amend their ATS claim. Plaintiffs are, however, granted leave to amend their complaint with respect to their RICO claim against Nadra Bank.

### IV. CONCLUSION

For the foregoing reasons, Nadra Bank's motion to dismiss Plaintiffs' Amended Complaint is GRANTED, with prejudice as to Plaintiffs' ATS claim and without prejudice with respect to Plaintiffs' RICO claim.  This Opinion resolves Docket Entry 66.

SO ORDERED.

Dated: New York, New York
August 28, 2013

/s/_____
Kimba M. Wood
United States District Judge