UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

**YULIA TYMOSHENKO, SCOTT SNIZEK,
CHRISTY GREGORY RULLIS and JOHN DOES 1
through 50,**
on behalf of themselves and all of those similarly situated,

                       *Plaintiffs,*        11-CV-2794 (KMW)

    v.

**DMYTRO FIRTASH a/k/a DMITRY FIRTASH,
SEMYON MOGILEVICH, ARTHUR G. COHEN,
KAREN COHEN**; **BRAD S. ZACKSON, PAUL J.
MANAFORT, CMZ VENTURES, LLC, KALLISTA
INVESTMENTS LLC a/k/a CALISTER
INVESTMENTS LLC, THE DYNAMIC GROUP
a/k/a THE DYNAMIC FUND**, **BARBARA ANN
HOLDINGS LLC, VULCAN PROPERTIES, INC.,
GROUP DF, GROUP DF LIMITED, GROUP DF
FINANCE LIMITED, GROUP DF REAL ESTATE,
and JOHN DOES 1 through 100,**

                       *Defendants*.

_____

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW
PURSUANT TO THE COURT'S ORDER OF MARCH 6, 2014 (Dkt. 104)**


Dated: New York, New York
      April 4, 2014                      Kenneth F. McCallion
                                          McCALLION & ASSOCIATES LLP
                                          100 Park Avenue – 16th floor
                                          New York, New York 10017
                                          Tel. 646-366-0880
                                          *Attorneys for Plaintiffs*

## I.     PRELIMINARY STATEMENT

On March 3, 2014, Plaintiff's counsel filed a letter with the Court seeking 90 days to provide the Court with further support for Plaintiff's opposition to the pending motion to dismiss and/or plaintiffs' application to further amend their pleadings. Dkt. No. 101 at 1. The Court granted this application, but upon the application of defendants' counsel for reconsideration, the Court, on March 6, 2014, directed plaintiffs to "file a memorandum explaining the import of these newly-discovered documents, attaching the documents and English translations thereof." The Court further ordered that "Discovery may continue until further notice."

## II.    DISCOVERY OF RELEVANT DOCUMENTS THAT THE YANUKOVYCH REGIME ATTEMPTED TO DESTROY

As has been widely reported in the press, certain documents have been recently discovered that the Yanukovich Regime had attempted to destroy during President Yanukovych's hasty departure from Kyiv. Numerous nylon bags of documents were retrieved from the riverbed near Yanucovych's residential compound, and, in addition, a trove of documents was found in the residence of the deposed prosecutor general, Viktor Pshonka, including documents found in his sauna.

Since that time, a team of journalists and volunteers from NGOs (non-governmental organizations) have attempted to dry out the waterlogged documents and are in the process of posting them on an internet website named "Yanukovychleaks.org." Although many documents have already been analyzed, thousands of documents (some intact and others partially destroyed) still remain to be analyzed and published. Other documents are in such poor condition that they cannot be properly scanned and posted, which means that their analysis will be a laborious process of forensic analysis.

In addition, certain former operatives who had been affiliated with the Yanukovych Administration have agreed to cooperate with the Ukraine Ministry of Justice and General Prosecutor's Office, which are now staffed with appointees of the interim government. These former officials have, upon information and belief, provided valuable information regarding governmental corruption by the Yanukovych Regime and their private, non-governmental sources of money, such as Dimitri Firtash and the numerous companies he controls.

### A. The Manafort/Craig Memo of August 24, 2012

One of the documents retrieved from the former Prosecutor General's sauna is a Russian translation of an email/memo dated August 24, 2012 from Gregory B. Craig to Paul Manafort. A copy of the Russian-language document and the English translation is attached hereto as Exhibit A. Mr. Craig is President Obama's former White House counsel and a partner at the Skadden Arps law firm, which was working at that time on an allegedly "independent" investigation and report regarding the Tymoshenko criminal prosecutions.

In order to fully understand the significance of this document, it must be kept in mind that Manafort was a longstanding political consultant to President Yanukovych, and had played a substantial role in Yanukovych's political successful political campaign for the Presidency, in which he narrowly defeated Yulia Tymoshenko. Following the election, Manafort continued, upon information and belief, to be Yanukovych's principal agent/representative within the United States and, in all likelihood, outside of Ukraine or Russia.

In this context, the clear inference of this document is that Manafort was orchestrating and "coordinating" the Skadden "independent" investigation with the Ukrainian government so that Yanukovich and his racketeering co-conspirators, including Firtash, could be kept fully informed of what the Skadden "team" members were looking at, what they were looking for, and where their "investigation" was headed.

### B. Edited Drafts of the Skadden Report

Although plaintiff's counsel has not yet seen the actual documents, it has also been reported in the press that, for example, "[t]he papers in the sauna … included an early draft of Skadden's report that had been annotated by Ukrainian government officials, who appeared to be pushing the Americans for a more sympathetic interpretation of the case…" *See New York Times, Andrew E. Kramer, Feb. 26, 2014, "Prize Catch for Ukrainians at Boat Harbor: A Soggy Trove of Government Secrets."*

If this report is correct, then a draft (or multiple drafts) of the Skadden Report (which concluded that the Tymoshenko prosecution was not politically motivated, albeit procedurally flawed) were leaked to Yanukovych and his agents for edits and comments prior to the release of final "independent" Report?

Copies of these annotated drafts of the Skadden Report will be provided to the Court and defense counsel once they are made available.

### C. Evidence of Misrepresentations By the Yanukovych Administration Regarding the Amount of Money that Was Paid to Skadden for the "Investigation."

In a letter dated June 25, 2012, the Ukraine Ministry of Justice represented that the entire contract price relating to the hiring and retention of the Skadden Firm was ninety-five thousand (95,000) hrivnas, which is less than $12,000 USD (1 USD is the equivalent of approximately 8 hrivnas. See **Exhibit B** attached hereto. Upon information and belief,

4

the importance of this absurdly low retainer amount was that, under Ukrainian "anti-corruption" law, any contract of 100,000 hrivnas or more (less than $13,000 USD) was subject to "tender proceedings" requiring detailed disclosures and a bidding procedure, which would have permitted other law firms to submit bids for this government contract.

In an email sent by Tymoshenko's Ukrainian counsel, Sergiy Vlasenko, to Gregory Craig and Alex Haskell, two of the Skadden partners who visited Ukraine during the investigation, the Skadden Firm was specifically asked how two "highly ranked" partners of Skadden and a large team of associates could have been working for more than five months (May through October 2012) on the investigation for $12,000, when their travel and lodging expenses alone for the time they spent in Kyiv would alone have exceeded that sum. Mr. Vlasenko never received a response from the Skadden Firm to his questions.

Upon information and belief, several partners and associates from the Skadden Firm were in Kiev on May 24-25, May 29-31 and June 5, 2012, allegedly in furtherance of their investigation. Although numerous witnesses were interviewed at the time, and documents were made provided to them documenting the blatant political motivation behind the sham investigations" and "prosecutions" of Tymoshenko and other political opposition leaders, this evidence of the systemic use of prolonged arbitrary detention for political ends was completely excised and "white washed" from the Skadden final report. Now that documents have come to light establishing the key role that Manafort played in orchestrating the Skadden "investigation," the failure of the Skadden report to find (or even to investigate) the clear evidence provided regarding the political nature of the Tymoshenko "show trial" is unsurprising.

5

Upon information and belief, since one round trip ticket (business class) between Washington, D.C. and Kyiv costs approximately $3000, the air fare alone for five attorneys (the minimum number of Skadden attorneys sent to Kyiv on any one of the multiple excursions) exceeded the $12-13,000 "contract amount" represented to the public and the Ukrainian Parliament.

In addition, upon information and belief, the cost of a hotel room in Kyiv is a minimum of $200 per night, or $1000 per night for five Skadden attorneys. The Skadden group stayed at the Fairmount Kiev Hotel, which is, upon information and belief, an excellent hotel, which leads to the reasonable conclusion that the Skadden hotel charges alone (excluding meals and other services) was substantially in excess of $1000 per day.

Moreover, evidence has been uncovered that there were at least two Skadden partners (Gregory Craig and Cliff Sloan) present during the Skadden expeditions to Kyiv, and three associates. Since, upon information and belief, the two partners were billed out at $750 per hour (or $1500/hour for both), and the billing rates for the three associates were at least $400 per our (or $1200/hour for all three), the hourly billing for the five Skadden attorneys was thus at least $2700/hour, and a conservative estimate of the Skadden billing for attorneys' time is $2 million.

Although plaintiffs' counsel is reliably informed that there are literally thousands of documents that have yet to be analyzed and published, and not all of the cooperating witnesses who held positions in the Yanukovych administration have been fully "debriefed," it appears that one of the reasons why the Yanukovych Administration staunchly misrepresented the amount of compensation provided to the Skadden firm was that most of the funding for, and "monitoring" of, the Skadden so-called investigation came from non-governmental sources, such as Manafort, Firtash and the companies they and their co-

conspirators control. In this way, Firtash, Manafort and their co-conspirators could monitor and "steer" the Skadden investigation away from certain sensitive areas (such as the massive, politically-motivated violations of human rights and suppression of political dissent) and towards less dangerous subjects (relatively minor procedural irregularities in the Tymoshenko investigations and prosecutions).

### D. The Chicago Indictment of Firtash

Within the past 48 hours, the U.S. Attorney's Office for the Northern District of Illinois (Chicago) has unsealed the RICO indictment of Firtash and five other defendants relating to a bribery scheme involving Boeing Corp. (identified in the indictment as "Company A," and as a " purchaser of titanium products") and various licensing authorities in India. In essence, the Chicago Indictment alleges that Firtash and his co-conspirators engaged in the same kind of money laundering and fraud scheme in India that Firtash, Manafort and their U.S. co-conspirators conducted in the U.S., as alleged in the Second Amended Complaint. Just as the domestic racketeering and real estate fraud scheme alleged in the Second Amended Complaint damaged numerous *bona fide* U.S. businesses and real estate ventures in New York and elsewhere, Firtash's Indian conspiracy caused significant damages in India and elsewhere, according to the Chicago Indictment. A copy of the Firtash Chicago Indictment is attached hereto as **Exhibit C**.

In addition, as detailed in the Indictment, Firtash and his co-conspirators used the same *modus operendi* as alleged in the Second Amended Complaint, conducted their racketeering scheme through literally dozens of companies in order to obscure the money trail.

### III.    CONCLUSION

Since the recently discovered documents have not yet been fully reviewed or analyzed, and the newly cooperating witnesses have not yet been fully de-briefed, plaintiffs respectfully request that the Court continue to hold open discovery, as directed in its March 6, 2014 Order. In addition, upon information and belief, the investigation of Firtash and his co-conspirators (both U.S.-based and non-U.S. based) by the FBI and the U.S. Dept. of Justice is continuing, and the fruits of that investigation may lead to additional or superseding indictments that prove to be highly relevant to the subject matter of the Second Amended Complaint.

Dated:  New York, New York
        April 4, 2014

**McCALLION & ASSOCIATES LLP**

_____/s/_____
Kenneth F. McCallion (Bar # KFM-1591)
100 Park Ave, 16th floor
New York, NY 10017-5538
(646) 366-0880
*Attorney for Plaintiffs*