IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YULIA TYMOSHENKO, *et al.* | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 11-02794 (KMW) |
| | ) |
| DMYTRO FIRTASH, *et al.* | ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MEMORANDA
REGARDING NEWLY DISCOVERED DOCUMENTS**

Pending before the Court is the Moving Defendants'[1] Motion to Dismiss the Second Amended Complaint ("SAC") of Plaintiff Yulia Tymoshenko, the former Prime Minister of Ukraine. The SAC is Ms. Tymoshenko's third effort to seek monetary damages in the U.S. courts for alleged mistreatment by her political opponents. After a previous effort was dismissed by the Court, Ms. Tymoshenko recast a Ukrainian-centered human rights case as a U.S.-based RICO conspiracy involving failed real estate deals and the state-law employment claims of two U.S.-citizen plaintiffs, Scott Snizek and Christy Rullis who, the SAC alleged, were "duped and deceived by the defendants into believing that defendants were engaged in legitimate business ventures in New York and elsewhere in the U.S., when in truth and in fact, defendants operated their various U.S.-based companies as part of their Racketeering Enterprise for various" racketeering activities. *See* Dkt. No. 87 at 5-6.

The Moving Defendants' Motion to Dismiss the SAC highlighted the SAC's two fatal flaws. First, consistent with the previous complaints filed by Ms. Tymoshenko in this matter, it repeatedly substitutes unsupported speculation and legal conclusions for specific facts. Second,

---

[1] For the purpose of this filing, the Moving Defendants are Paul Manafort, Brad Zackson, the Dynamic Group, Barbara Ann Holdings LLC, and CMZ Ventures, LLC.

1

the cosmetic de-emphasis of the extraterritorial nature of the alleged scheme did not change the character of the "foreign enterprise" alleged or the fact that it was "focused abroad." *See* Dkt. No. 78 at 22 (Order dismissing Amended Complaint).

On March 3, 2014, Plaintiffs' counsel informed the Court that "certain documents have come to light that, upon information and belief, will provide plaintiffs with *significant additional evidentiary support* with regard to the legal issues raised in the pending motion to dismiss." Dkt. No. 101 at 1 (emphasis added). In response, the Court ordered "on April 4, plaintiffs shall file a memorandum explaining the import of the newly-discovered documents, attaching the documents and English translations thereof." Dkt. No. 104.

On April 4, Plaintiffs submitted their memorandum, along with two documents purportedly recovered from Ukraine.[2] Dkt. No. 105, at 2-4. The documents are wholly irrelevant to Plaintiffs' claims that the Moving Defendants were involved in a U.S.-based RICO conspiracy and, if anything, demonstrate that Plaintiffs continue to prosecute extraterritorial Ukrainian-focused claims. But Plaintiffs' April 4 memorandum is perhaps more telling, as it demonstrates Plaintiffs' willingness to make wild, speculative allegations without any factual support in order to maintain a frivolous action that has no place in the U.S. courts.

The first document is alleged[3] to be a memo from Gregory B. Craig, a lawyer at the law firm Skadden, Arps ("Skadden") to Paul Manafort regarding Mr. Craig's request for documents and information from the Prosecutor-General's Office of Ukraine. Dkt. No. 105-2. It ends with

---

[2] Plaintiffs' filing included four attachments, but only two relevant documents. One attachment was an English translation of another attachment, and another attachment was an U.S. federal court indictment against a Ukrainian businessman and others alleging an India-based FCPA scheme.

[3] Contrary to the earlier representation that the documents would provide "significant additional evidentiary support," *see* Dkt. 101 at 1, Plaintiffs' counsel now admits that he has "not yet seen the actual documents." Dkt. 105 at 4.

Mr. Craig's request that Mr. Manafort help expedite his request to obtain information. *Id.* From that, Plaintiffs allege:

> the clear inference of this document is that Manafort was orchestrating and "coordinating" the Skadden "independent" investigation with the Ukrainian government so that Yanukovich and his racketeering co-conspirators, including Firtash, could be kept fully informed of what the Skadden "team" members were looking at, what they were looking for, and where their "investigation" was headed.

Dkt. No. 105 at 4. Plaintiffs make no attempt to tie the actual text of the two-paragraph email to the serious allegations that a former White House counsel and preeminent U.S. law firm were conducting a sham investigation orchestrated by Mr. Manafort in furtherance of a racketeering conspiracy. Indeed, that text makes clear that Plaintiffs' allegations, now published publicly in this Court's docket, are not "inferences" but rather frivolous, albeit stigmatizing, allegations.

The second document is alleged to be an [unanswered] email from Plaintiffs' Ukrainian counsel to Mr. Craig and another Skadden partner regarding the amount Skadden charged to conduct the investigation. None of the Moving Defendants sent, received, or were copied on the email and there is no mention in the email of events relevant to the allegations in the SAC. Nevertheless, Plaintiffs cite the memo as evidence that Skadden "white washed" its investigative report, *id.* at 5, and assert that "most of the funding for, and 'monitoring' of, the Skadden so-called investigation came from non-governmental sources, such as Manafort, Firtash, and the companies they and their co-conspirators control." *Id.* at 6-7. Plaintiffs cite no evidence for this bald assertion, either in the "newly discovered" documents or otherwise, and ignore the fact that in opposition the Motion to Dismiss the SAC, they represented to the Court that:

> [t]he Second Amended Complaint ("SAC") is substantially different than the Amended Complaint, which was previously dismissed by the Court, in that its entire focus is on the civil racketeering activities of defendants within the United States. . . . [A]ll of the racketeering acts in furtherance of defendants' U.S.

3

> Racketeering Enterprise took place within the U.S., and once this Enterprise was well established, the overwhelming percentage of the unlawful proceeds of this Enterprise were generated by activities within the U.S. and used to fund the expansion of the Enterprise's domestic operations.

Dkt. No. 97 at 1. After promising the Court that these "newly discovered" documents would provide "significant additional evidentiary support" for the allegations contained in the SAC, Dkt. No. 101 at 1, Plaintiffs wholly abandoned their frivolous U.S.-based conduct allegations and reverted back to the Ukraine-focused theory that this Court has already rejected as failing to state a claim.

In a final effort to save this civil suit, Plaintiffs filed a "Second Supplemental Memorandum of Law Pursuant to the Court's Order of March 6, 2014" on April 9, 2014. Dkt. No. 106. Of course, the Court's Order of March 6, 2014 required Plaintiffs to file their memorandum by April 4, 2014, and Plaintiffs offer no excuse for their untimely filing other than to claim that the document was "received" after the filing deadline without identifying from whom the document was received or the circumstances causing the delay in its receipt. *Id.* at ECF p. 2. Strikingly, Plaintiffs do not suggest that this document was among the "newly discovered" documents referenced in their initial request to the Court to provide further documents in support of their opposition to the pending Motion to Dismiss.

Aside from the timing issues, the documents attached to the Plaintiffs' April 9 submission do not provide the "significant additional evidentiary support" Plaintiffs suggested would be forthcoming. Plaintiffs allege the documents are a memorandum (in both Russian and English) from a partner of Mr. Manafort to two individuals concerning a potential real estate deal in New York. Plaintiffs claim, "upon information and belief," that the recipients of the memorandum were associates of a wealthy Russian businessman, then cite various news articles suggesting the Russian businessman had ties to organized crime. Dkt. No. 106 at ECF pp. 2-3. They cite no

evidence that Mr. Manafort or any of the other Moving Defendants had any contact with the wealthy Russian businessman on this or any other occasion. Nor do Plaintiffs point to any portion of the document that supports their theory, advanced in the SAC without any factual support, that the Moving Defendants were engaged in a racketeering conspiracy related to failed real estate deals. Notwithstanding the limited scope of the document (and setting aside any questions of authenticity and foundation), Plaintiffs unreservedly declare that it

> confirms that Paul Manafort had direct contacts with high-level Russian figures who were, upon information and belief, under investigation by the FBI and the U.S. Dept. of Justice for alleged money laundering and other criminal activities within (and without) the U.S., and that Manafort, Gates, and the other U.S. based defendants were directly conspiring to defraud Harry Macklowe, Fisher Construction, Alatau Hospitality and Inovalis Real Estate and other major players in the U.S.-based real estate, hotel development and construction fields with regard to the Drake Hotel/Bulgari Tower project in midtown Manhattan.

*Id.* at ECF p. 3.

This is the first mention of Fisher Construction, Alatau Hospitality, Inovalis Real Estate, or other, unidentified "major players" in the U.S.-based real estate, hotel development and construction fields. Of course, Plaintiffs offer no explanation for how the single document attached to their April 9 submission supports their sweeping claim of criminality by Mr. Manafort, now Mr. Gates, and "the other U.S. based defendants."

The approach taken in Plaintiffs' April 4 and April 9 submissions is consistent with how Plaintiff Yulia Tymoshenko, through counsel, has proceeded throughout the three-year duration of this case. She has made wild and unsubstantiated claims designed to stigmatize those she deems connected to her political enemies, and counsel has made repeated promises to the Court to bring forth factual support for inadequately pleaded Complaints. In light of Plaintiffs' most recent filings, the Court should not allow Plaintiffs to continue to use its docket as a forum to

5

post outrageous attacks.  The Moving Defendants' Motion to Dismiss the Second Amended Complaint is ripe for this Court's consideration and the Court should grant the motion with prejudice without further delay.

Dated: April 16, 2014

Respectfully submited,

   /s/ Richard A. Hibey
Richard A. Hibey
Andrew T. Wise
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W. Suite 900
Washington D.C.  20005-6701
Tel: 202-626-5800
Fax: 202-626-5801
Email: rhibey@milchev.com
      awise@milchev.com

*Attorneys for Defendants Paul Manafort, Brad Zackson, CMZ Ventures, LLC, The Dynamic Group, and Barbara Ann Holdings LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 16th day of April, 2014, a true and genuine copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to all counsel of record.

                                                       /s/ Richard A. Hibey