**McCallion & Associates, LLP**
100 Park Avenue, 16th Floor, New York, NY 10017
Telephone: 646-366-0880 / Facsimile: 646-366-1384
www.mccallionlaw.com

**Kenneth F. McCallion**
kfm@mccallionlaw.com

**VIA ECF**

August 12, 2014

Honorable Kimba M. Wood
United States District Judge
Southern District of New York
500 Pearl Street- Courtroom 9A
New York, New York 10007

Re: Tymoshenko v. Firtash et al
Index No. 11 Civ. 02794 (KMW)

Dear Judge Wood:

As directed in the Court's Order dated August 4, 2014, plaintiff herein addresses the question raised by the Court as to what extent, if any, the decision in European Cmty. v. RJR Nabisco, Inc affects the arguments raised in the pending motion to dismiss.

Plaintiff believes that the Second Circuit's decision in RJR Nabisco is directly applicable to the pending motion in the case at bar, in that the Second Circuit, in reversing the district court's dismissal of plaintiff's RICO complaint, explicitly concluded that the RICO claims alleged in the complaint "are within the scope of the statute and that the state law claims are within federal diversity jurisdiction." 2014 U.S. App. LEXIS 7593.

As the Court explains in its decision, "[t]he RICO claims brought by the European Community (EC), on behalf of its members, were improperly dismissed because as to a number of alleged RICO predicates, Congress had clearly manifested an intent that they apply extraterritorially…." The complaint in RJR Nabisco alleged that "RJR directed, managed, and controlled a global money-laundering scheme with organized crime groups in violation of the RICO statute, laundered money through New York-based financial institutions and repatriated the profits of the scheme to the United States, and committed various common law torts in violation of New York state law." *Id.* at 7593 *3, *citing* Morrison v. Nat'l Austl. Bank Ltd., 561 U.S. 247 (2010).

Specifically, the RJR complaint alleged "that RJR directed and controlled this money-laundering scheme, utilizing other companies to handle and sell their products. *Id.* at *5. The complaint further alleged that "the money brokers used[d] the funds derived

from the cigarette importers to continue the laundering cycle." *Id*. In addition, it is alleged that "RJR's employees traveled extensively from the United States [to oversees locations] to supervise the money-laundering scheme …[and] that RJR communicated internally and with its coconspirators b means of U.S. interstate and international mail and wires….*Id.* Further, RJR is alleged to have used the profits from its money laundering scheme in the United States to acquire additional entities "for the purpose of expanding upon their illegal cigarette sales and money-laundering activities." *Id.* at *7. Finally, the RJR complaint alleged that RJR "committed New York common law torts of fraud, public nuisance, unjust enrichment, negligence, negligent misrepresentations, conversion, and money had and received." *Id.*

In holding that the district court erred in finding that the RICO enterprise alleged was insufficient since it was primarily, if not exclusively, extraterritorial, the Second Circuit, in <u>RJR</u>, noted that the district court had misapplied the Second Circuit's prior holding in <u>Norex Petroleum Ltd. v. Access Industries, Inc</u>., 631 F. 3d 29 (2d Cir. 2010), erroneously finding that "RICO can never have extraterritorial reach in any of its applications." *Id.* at *12. The Second Circuit, in <u>RJR,</u> found that the district court's decision, which it reversed, was based upon a "misreading of <u>Norex</u>." *Id*. In particular, the Second Circuit, in RJR, noted that the money laundering statute, which was used in the RJR complaint as a predicate act –and in the case at bar also – "explicitly applies to extraterritorial conduct." *Id.* at *18.

Just as the defendants erroneously argued in <u>RJR Nabisco</u>, the defendants here assert that that RICO cannot apply to extraterritorial conduct. However, the Second Circuit explicitly rejected this argument in <u>RJR</u> and reversed the district court, which had based its decision on this erroneous legal premise. In addition, the Second Circuit, in <u>RJR Nabisco</u>, rejected the argument that the defendants' domestic activities within the United States were insufficient to come within RICO's coverage, and that, as the district court in RJR erroneously found, "the defendant [must] be, loosely speaking, associated with a domestic enterprise in order to sustain RICO liability…." Id. at *19. In RJR, the Second Circuit concluded "that [the complaint] alleges sufficient domestic conduct for the claims involving mail fraud, wire fraud, and Travel Act violations to sustain the application of RICO, notwithstanding that these predicates do not apply extraterritorially." *Id*. at *26.

Similarly, in the case at bar, the factual basis alleged in plaintiffs' Second Amended Complaint provides an equally solid basis to support the extraterritorial application of the RICO statute, especially where the domestic activities alleged in plaintiffs' pleadings are set forth in great detail.  For example, the Second Amended Complaint alleges that defendants  formulated a racketeering scheme that involved the formation of three companies based at 1501 Broadway (25$_{th}$ floor) in Manhattan: defendants CMZ Ventures LLC ("CMZ" or "CMZ Ventures"), the Dynamic Fund and Kallista Investments LLC. According to the formation documents for CMZ, the three joint owners of the Company were (a) Barbara Ann Holdings, LLC, which was controlled bydefendant Brad S. Zackson, (b) Vulcan Properties, Inc., which was controlled by New York real

estate magnate Arthur Cohen and his wife, and (3) a company initially referred to as "XXX LLC," which was controlled by Paul Manafort. It was agreed among the defendants that defendant Firtash would be an undisclosed "silent" partner in CMZ, and that he would be providing the bulk of the funds to be laundered through the New York-based companies and bank accounts.

It is further alleged by plaintiffs that , as is typical of many complex corporate racketeering schemes, defendants Manafort, Zackson and the U.S.-based defendants used literally dozens of shell companies and other fronts to disguise their illegal money laundering activities. On the surface, these duly incorporated companies operated from their showcase Manhattan office on ostensibly legitimate real estate deals. However, it is alleged that, in actuality, these companies operated largely in an unlawful manner, failing to maintain proper corporate books and records and intermingling funds so that when one company was investigated by a government agency or sued, it would be closed down, and its operations transferred to a new, clean company with a similar name in order to confuse government regulators and to make the funds difficult to trace. Thereafter, Manafort and the other U.S.-based defendants signed a Letter of Intent to purchase the Drake Hotel project site in Manhattan, paying an initial deposit of $10 million (supplied secretly by Firtash) and promising to pay an additional $885 upon closing. In addition, one of Firtash's agents wire transferred $25 million from a European bank account of the Group DF (controlled by Firtash) to CMZ's escrow account in New York with First American Title Insurance Company. Although this and other wire transfers were ostensibly for the Drake Hotel site project and other projects that the U.S.-based defendants were supposedly working on, their real intention was to launder the funds through various New York bank accounts and then, with that goal accomplished, withdraw from the real estate projects and never actually close any "deals."

Clearly, therefore, the RICO enterprise and racketeering acts alleged in the pending case is similar to that alleged in RJR in that it has both domestic and international aspects, with sufficient allegations of U.S. domestic activities involving money laundering and other predicate acts to meet the minimal requirements for jurisdiction under the RICO statute.

Respectfully submitted,

/s/
Kenneth F. McCallion

cc: All other counsel