UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

YULIA TYMOSHENKO, SCOTT SNIZEK,
CHRISTY GREGORY RULLIS, and JOHN
DOES 1 through 50, *On Behalf of Themselves
and All Those Similarly Situated,*

                       Plaintiffs,                                 11-CV-2794 (KMW)
                                                      **OPINION AND ORDER**

-against-

DMYTRO FIRTASH, et al.,

                       Defendants.
------------------------------------------------------------X

KIMBA M. WOOD, District Judge:

       Plaintiff Yulia Tymoshenko, former Prime Minister of Ukraine, and Plaintiffs Scott

Snizek and Christy Gregory Rullis have filed a Third Amended Complaint ("TAC") against

Ukrainian businessman Dmytro Firtash, several Ukrainian associates, and a number of U.S.

individuals and corporations alleging that Defendants' conduct violated the Racketeer Influenced

and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, as well as state law.

       Several U.S. Defendant corporations and citizens have moved to dismiss the TAC with

prejudice pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). For the reasons set

forth below, the Court GRANTS the motion to dismiss the TAC and DENIES Plaintiffs leave to

amend their complaint for a fourth time.

## I.      BACKGROUND

       What follows is an abbreviated summary of the history of the case and the factual

background. A more detailed discussion of this background can be found in *Tymoshenko v.

Firtash*, 57 F. Supp. 3d 311, 314–319 (S.D.N.Y. 2014) (Wood, J.) ("*Tymoshenko II*").

A. *Relevant Procedural History*

In December 2011, Plaintiff Tymoshenko filed the Amended Complaint ("AC") in this action, asserting claims against Dmytro Firtash and his associates under RICO, the Alien Tort Statute, 28 U.S.C. § 1350, and various state laws. *See* [Dkt. No. 23]. The AC alleged that Firtash and his co-Defendants had induced Ukrainian officials to unlawfully prosecute and detain Tymoshenko and her political allies in retaliation for their political opposition to Firtash's interests. *See* AC ¶¶ 15, 93–94,160–62, 279. In March 2013, the Court dismissed the RICO claims as impermissibly extraterritorial, based on the prevailing legal framework at the time, because the enterprise and pattern of racketeering activity described in the AC were predominantly foreign. *See Tymoshenko v. Firtash*, No. 11-CV-2794, 2013 WL 1234821 (S.D.N.Y. Mar. 26, 2013) (Wood, J.).

Tymoshenko asserted a revised RICO claim in the Second Amended Complaint ("SAC") in November 2013, adding U.S.-based Plaintiffs Scott Snizek and Christy Gregory Rullis, and alleging that the Defendants' racketeering enterprise was domestic and therefore fell within RICO's territorial scope as then understood. *See* [Dkt. No 87]. In September of last year, the Court dismissed the SAC on the grounds that Plaintiffs failed to adequately plead predicate acts of wire fraud, mail fraud, or money laundering necessary to support a RICO claim. *Tymoshenko II*, 57 F. Supp. 3d at 319. However, the Court granted leave for Plaintiffs to amend their complaint in light of *European Community v. RJR Nabisco, Inc.*, 764 F.3d 149 (2d Cir. 2014), which was decided after the briefs had been filed and which changed the framework for applying RICO extraterritorially.[1]

---

[1] Because *Tymoshenko II* was decided based on Plaintiffs' failure to plead predicate acts, the Court did not reach the issue of extraterritoriality. 57 F. Supp. 3d at 319.

Plaintiffs then filed their Third Amended Complaint ("TAC") in November of last year, again alleging violations of both RICO and state law. *See* [Dkt. No. 120]. The TAC asserts largely the same claims as the SAC, although Plaintiffs have added several new Defendants and have reframed their allegations regarding the purpose of the alleged racketeering enterprise. *See id.* ¶¶ 4, 17–21, 34. In response, U.S. Defendants Paul J. Manafort; Barbara Ann Holdings, LLC; CMZ Ventures, LLC; The Dynamic Group; Brad S. Zackson; and Vulcan Properties, Inc. (collectively, "the Moving Defendants") have filed motions to dismiss the TAC with prejudice.[2] *See* [Dkt. No 121] (Manafort, et al.); [Dkt. No. 124] (Vulcan).

## B. *Factual Allegations*

What follows is a summary of the factual allegations asserted in the TAC. These allegations closely parallel those in the SAC. They are accepted as true for purposes of the Moving Defendants' motions to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant Dmytro Firtash is the owner of a Ukrainian energy company, RosUkrEnergo ("RUE"). TAC ¶ 3. From 2004 to 2009, RUE earned millions of dollars by serving as a "middleman" in natural gas contracts between Naftogaz—a Ukrainian state-owned gas company—and Gazprom—a Russian gas company that is also partially state-owned. *Id.* RUE was able to obtain this lucrative position by virtue of Firtash's close relationship with Ukrainian government officials. *Id.* In December 2007, Plaintiff Yulia Tymoshenko became Ukraine's Prime Minister. *Id.* ¶ 10. Over the following two years, she took steps to exclude RUE from natural gas transactions between Ukraine and Russia, culminating in her negotiation of new

---

[2] Vulcan filed a separate motion to dismiss "based on the reasons . . . fully set forth" by the other Moving Defendants, Mot. Dismiss (Vulcan) [Dkt. No. 124] at 1, and which "join[ed], adopt[ed], and incorporate[d] the arguments" made in the Manafort Defendants' motion, Mem. of Law in Supp. (Vulcan) [Dkt. No. 125] at 3. Therefore the Court considers the motions together.

natural gas contracts with Russia in 2009 that entirely eliminated RUE as an intermediary. *See id.* ¶ 112.

In 2010, Viktor Yanukovych—an ally of Firtash—narrowly defeated Tymoshenko to become President of Ukraine, and Tymoshenko resigned as Prime Minister. *Id.* ¶ 41. The Yanukovych administration then began a campaign targeting Tymoshenko and her political allies with unfounded and malicious prosecutions that resulted in her imprisonment. *Id.* ¶¶ 4, 43.

Plaintiffs allege that this campaign against Tymoshenko was funded by a U.S.-based racketeering enterprise ("the Enterprise") that was orchestrated by Firtash but that included members of the Yanukovych administration, Ukraine-based individuals and companies controlled by Firtash, and a number of U.S.-based corporations and U.S. citizens. *See id.* ¶ 65. According to Plaintiffs, Firtash and his associates funneled money generated through unlawful "skimming" of natural gas transactions between the Ukraine and Russia to corporations based in the U.S., under the guise of legitimate real estate transactions that the Defendants in fact had no interest in pursuing. *See id.* ¶ 27. Defendants then funneled this money back to the Ukraine "through the labyrinth of Firtash . . . companies and bank accounts located in Europe, Cyprus, Panama, and elsewhere" so as to generate "virtually untraceable funds" that could be used to pay Ukrainian prosecutors and others within the Yanukovych administration. *Id.* ¶¶ 4, 10, 15, 22–23, 27, 35.

Plaintiffs also allege that an additional purpose of the Enterprise was to defraud several groups of U.S. plaintiffs: (1) Plaintiffs Scott Snizek and Christy Gregory Rullis, who are former employees of U.S. defendant corporations allegedly participating in the Enterprise and were denied promised wages and other benefits, *id.* ¶¶ 11, 97, 150; (2) John Doe U.S. Plaintiffs who were owners or developers of real estate holdings in which the Enterprise feigned serious

interest, and who lost valuable time and money as a result of this deception, *id.* ¶¶ 13, 27, 148; and (3) John Doe U.S. Plaintiffs to whom the Enterprise marketed Ukrainian real estate opportunities at "grossly inflated" prices, *id.* ¶¶ 13, 150.

The TAC also incorporates new allegations relating to "recent developments," none of which appear to be relevant to either their RICO or state law claims. Specifically, Plaintiffs allege that an "independent" investigation conducted by Skadden Arps into the prosecution of Tymoshenko by the Yanukovych administration was in fact "orchestrate[d] and coordinate[d]" by Defendant Paul Manafort, TAC ¶ 127, and that the Yanukovych administration intentionally underestimated their payment to Skadden for the investigation in order to avoid application of a Ukrainian anti-corruption law. *Id.* ¶ 129. The TAC has also added allegations describing separate investigations and proceedings taking place in other U.S. jurisdictions that involve either Firtash or purported associates of other Defendants, but it alleges no connection between the schemes at issue in those proceedings and the scheme alleged here. *See id.* ¶¶ 133–36.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the supporting factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where a plaintiff has failed to "nudge" a claim "across the line from conceivable to plausible," a district court must dismiss the complaint. *Twombly*, 550 U.S. at 570.

The Court must accept as true all well-pleaded factual allegations in a complaint and "draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50

(2d Cir. 2006) (internal quotations omitted). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## III.     DISCUSSION

The Moving Defendants contend that the TAC, like the SAC before it, fails to plead the elements of a civil RICO claim because it does not plead a predicate act of racketeering that proximately caused Plaintiffs' injuries. *See* Mem. of Law in Supp. (Manafort et al.) [Dkt. No. 122]; Mem. of Law in Supp. (Vulcan) [Dkt. No. 125].[3] The Court agrees.

### A.  RICO Claims

RICO proscribes four different types of racketeering activity. 18 U.S.C. § 1962. The first applies to anyone "who has received any income derived, directly or indirectly, from a pattern of racketeering activity" from using or investing that income either to acquire an interest in, establish, or fund the operation of an "enterprise" affecting interstate or foreign commerce. 18 U.S.C. § 1962(a). The second prevents any person from acquiring an interest in or maintaining control of such an enterprise "through a pattern of racketeering activity." *Id.* § 1962(b). The third bars anyone "employed by or associated with" such an enterprise from "conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Id.* § 1962(c). And the fourth applies to any conspiracy to commit one of the prior offenses. *Id.* § 1962(d).

Thus, to establish a RICO violation under any of these provisions, a plaintiff must allege (1) that the defendant participated in an enterprise, and (2) that the enterprise engaged in a "pattern" of racketeering activity, which requires the commission of at least two predicate acts

---

[3] Defendant Manafort also moves to dismiss on the additional ground that the Court lacks personal jurisdiction over him, as he did in response to the AC and the SAC. *See* Mem. of Law in Supp. (Manafort et al.) [Dkt. No. 121] at 24. As in the two previous opinions, the Court resolves the motion without reaching Manafort's jurisdictional argument.

identified in 18 U.S.C. § 1961(1). In a case against multiple defendants, the defendant must have "*personally* committed or aided and abetted in the commission of two predicate acts." *Sanchez v. ASA Coll., Inc.*, No. 14-CV-5006, 2015 WL 3540836, at *6 (S.D.N.Y. June 5, 2015) (Furman, J.) (emphasis added) (quoting *McLaughlin v. Anderson*, 962 F.2d 187, 192 (2d Cir. 1992)).

In order to obtain a civil remedy for a RICO violation under 18 U.S.C. § 1964(c), a plaintiff must also demonstrate that he has standing, which requires: (1) a violation of 18 U.S.C. § 1962, (b) an injury to plaintiff's business or property, and (c) proximate causation of the injury by the defendant's violation. *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001). Proximate cause, in turn, is established when the plaintiff's injuries are directly caused by the conduct that constitutes the RICO violation, *id.* at 381 (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268–73 (1992)), and the plaintiff's injury is "reasonably foreseeable or anticipated as a natural consequence" of the defendant's conduct, *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003) (internal quotation marks omitted); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990). An injury is reasonably foreseeable when the plaintiff is the "target[], competitor[], or intended victim[]" of the racketeering enterprise. *Lerner*, 318 F.3d at 124; *In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 400 (2d Cir. 1994); *Sperber v. Boesky*, 849 F.2d 60, 65 (2d Cir. 1988).

Here Plaintiffs allege violations of all four subsections of 18 U.S.C. § 1962, predicated on three types of acts: wire fraud under 18 U.S.C. § 1343, mail fraud under 18 U.S.C. § 1341, and money laundering under 18 U.S.C. § 1956. *See* TAC ¶¶ 140, 142–44. However the TAC—like the SAC—fails to plead adequately any predicate act that proximately caused Plaintiffs' injuries, and therefore fails to state a civil RICO claim.

1. <u>Predicate Acts of Wire and Mail Fraud</u>

The elements of wire fraud and mail fraud are almost identical. For both, a plaintiff must show (1) that the defendant initiated a scheme to defraud, (2) in order to obtain money or property, and (3) that the scheme was furthered by the use of either interstate wires, 18 U.S.C. § 1343, or the mails, 18 U.S.C. § 1341. In both cases, the object of the fraud must be something of value (i.e. money or property) "in the victim's hands." *Pasquantino v. United States*, 544 U.S. 349, 355 (2005).

Claims of either mail or wire fraud are subject to the heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires, "at a minimum, a plaintiff pleading RICO predicate acts sounding in fraud . . . [to] 'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" *Lefkowitz v. Reissman*, No. 12 CIV. 8703, 2014 WL 925410, at *4 (S.D.N.Y. Mar. 7, 2014) (Abrams, J.) (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999)). A plaintiff must do more than say that a particular statement was false or misleading; he or she must "demonstrate with specificity why and how that is so." *Sanchez*, 2015 WL 3540836, at *5 (quoting *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004)). When there are multiple defendants, a plaintiff must specify how each contributed to the fraud, rather than simply allege general participation in an overall fraudulent scheme. *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."); *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) ("Allegations of predicate mail and wire fraud acts should state . . . who was involved.").

Here, as with the previous complaint, Plaintiffs fail to allege predicate acts of mail and wire fraud with sufficient particularity to pass the heightened pleading standard under Federal Rule of Civil Procedure 9(b). In *Tymoshenko II*, the Court noted that, "Plaintiffs never explicitly identify any particular act or transaction that constitutes wire or mail fraud." 57 F. Supp. 3d at 317. The SAC did identify three courses of conduct that could be considered fraudulent: (1) the false promises of salaries and benefits to Plaintiffs Snizek and Rullis, as well as other employees; (2) the "sham real estate investment proposals" that falsely asserted Defendants had a serious interest in properties in the U.S.; and (3) the marketing of Ukrainian properties to U.S. investors at "fraudulently inflated prices." *Id.* However the Court concluded that the pleadings were inadequate to establish any of these as a predicate act for RICO purposes. *Id.* at 321–22.

The TAC identifies these same three courses of conduct, and offers nearly identical factual allegations in support of them. *Compare* TAC ¶¶ 98–100, 139, 145, 148, 150 *with* SAC ¶¶ 93–95, 128, 131. Plaintiffs have amended their pleadings to incorporate some new references to communications made via interstate mail or wires, *e.g.*, TAC ¶¶ 76, 81, 84, 89-91, 98, but none of these modifications provides enough specificity to overcome the failings identified previously. With respect to all three courses of conduct, the TAC still fails to plead with particularity specific statements that were made, when and where the statements were made, how statements were fraudulent, and most crucially, who was responsible for making them. *See Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013); *Rombach*, 355 F.3d at 174.

Plaintiffs have also failed to establish that the alleged acts of mail and wire fraud proximately caused the victims' harms, because again they have failed to plead facts to establish that they were the "targets, competitors, or intended victims" of the Enterprise. Although

9

Plaintiffs have amended their complaint to include general allegations to this effect, *see, e.g.*, TAC ¶ 13, these statements amount to no more than legal conclusions couched as factual allegations, which the Court is not bound to accept as true. *Twombly*, 550 U.S. at 555. Plaintiffs have not plead facts adequate to support the conclusion that obtaining money from the John Doe investors was the *purpose or object* of the alleged scheme, even accepting as true the allegation that investors wasted "time, money, and property" in reliance on Defendants' misleading statements. *See Tymoshenko II*, 57 F. Supp. 3d at 322–23. Plaintiffs have also not provided any facts to show that obtaining the unpaid labor of Plaintiffs Snizek and Rullis was the *purpose or object* of the alleged scheme. Therefore, the conclusory allegations that Plaintiffs were the "targets or intended victims" of the Enterprise is insufficient to establish proximate cause for a civil RICO claim based on a predicate act of wire or mail fraud.

2.   Predicate Acts of Money Laundering

There are two primary sections to the money laundering statute, one that applies to domestic activity and one that applies to international activity. The section that applies to domestic activity, 18 U.S.C. § 1956(a)(1) (hereinafter the "domestic money laundering statute"), requires that a defendant (1) engaged in a financial transaction that in fact involved the proceeds of a specified unlawful activity, (2) knew that the transaction involved such proceeds, and (3) either intended "to promote the carrying on of a specified unlawful activity," 18 U.S.C. § 1956(a)(1)(A)(i), or knew the transaction was designed "to conceal or disguise the nature, location, source, ownership, or control of the proceeds," 18 U.S.C. § 1956(a)(1)(B)(i). A "specified unlawful activity" is any activity listed in 18 U.S.C. § 1956(c)(7). Meanwhile the section that applies to international activity, 18 U.S.C. § 1956(a)(2) (hereinafter the "international money laundering statute"), applies whenever a defendant moves funds across the

U.S. border "with the intent to promote the carrying on of a specified unlawful activity," 18 U.S.C. § 1956(a)(2)(A). Importantly, this latter statute *does not* require that the funds being transferred be the "proceeds" of a specified unlawful activity, so long as the party engaging in the transfer has the requisite intent to "promote the carrying on of a specified unlawful activity." *See Piervinanzi*, 23 F.3d 670, 679–80 (contrasting the domestic and international money laundering statute).[4]

Whether Plaintiffs sufficiently plead a predicate act of money laundering is a closer question than whether Plaintiffs have sufficiently plead acts of either wire or mail fraud, in part because the pleading standard is lower. In *Tymoshenko II*, the Court identified three transactions described in the SAC that could conceivably constitute money laundering: (1) the transfer of funds from the Ukraine to the U.S.; (2) the acquisition of new U.S. companies to expand the Enterprise; and (3) the transfer of funds from the U.S. back to the Ukraine. 57 F. Supp. 3d at 323. The TAC describes these same transactions in almost identical terms. *See* TAC ¶¶ 24, 25, 27, 85, 104. None of these three transactions is plead with enough detail to state a violation of the domestic money laundering statute, because Plaintiffs have failed to sufficiently allege that Defendants engaged in a "specified unlawful activity" that actually generated proceeds that could then be laundered.[5]

Plaintiffs come closer to pleading an activity that would violate the international money laundering statute when they allege that Defendants funneled money "through various Firtash-

---

[4] There is one portion of the international money laundering statute, 18 U.S.C. § 1956(a)(2)(B), that *does* require the defendant to have knowledge that the assets involved in the transfer are the proceeds of some form of unlawful activity. But the requirement that the money involved in the transaction be the proceeds of an unlawful activity does not apply to *all* subsections of the international money laundering statute, in contrast to the domestic statute.

[5] Plaintiffs' allegations that Defendants generated proceeds through unlawful "skimming" of natural gas transactions between the Ukraine and Russia, *see, e.g.*, TAC ¶ 24, are not enough to support a violation of the domestic money laundering statute, even assuming such conduct is in fact a violation of Ukrainian law. The domestic money laundering statute applies only to the laundering of proceeds of *specified* unlawful activities listed in 18 U.S.C. § 1956(c), none of which encompasses the "skimming" conduct Plaintiffs describe.

controlled European banks and bank accounts to New York-based banks, and then wired [the money] back to European bank accounts . . . through various complex and circuitous transfers" in order to generate "untraceable funds." TAC ¶ 10. According to Plaintiffs, these funds were then used to finance a "campaign to neutralize and destroy Tymoshenko . . . by means of illegal pay-offs to prosecutors and others in the Yanukovich administration." *Id.* Accepting these allegations as true, Plaintiffs have arguably plead that Defendants (collectively) (1) transferred funds across the U.S. border, and (2) that they did so with the intent of promoting a specified unlawful activity, namely, "an offense against a foreign nation involving . . . bribery of a foreign official." 18 U.S.C. § 1956(c)(7)(B)(iv).

But even assuming Plaintiffs have successfully plead a predicate act of money laundering, they nonetheless fail to establish a violation of RICO for two primary reasons: first, because they have not provided enough detail in their allegations to show that the predicate acts of money laundering took place on more than one occasion, which is necessary to establish a "pattern" of activities for RICO; and second, because they have failed to allege facts sufficient to establish that the Defendants were involved.

As discussed previously, in order to sufficiently plead any of the alleged RICO violations, Plaintiffs must show that there was a "pattern" of racketeering activity. *GICC Capital Corp. v. Technology Finance Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995). A "pattern of racketeering activity" requires "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). These acts (1) must be related, and (2) must amount to or pose a threat of continuing criminal activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *Spool*, 520 F.3d at 183. Continuity can be either "open-ended"—meaning there is a "threat of continuing criminal activity beyond the period during which the predicate acts were performed," *Cofacrédit, S.A. v.*

*Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)—or "closed-ended"—which requires "a series of related predicates extending over a substantial period of time," *H.J.*, 429 U.S. at 242. Although there is no bright line rule, the Second Circuit has never held a period of less than two years to constitute a substantial period of time. *Spool*, 520 F.3d at 184. The relevant time period is the period during which the RICO predicate activity took place, rather than the time during which the underlying scheme was in operation. *Id.*; *see also DeFalco v. Bernas*, 244 F.3d 286, 321 (2d Cir. 2001).

The TAC fails to allege predicate acts of money laundering with enough specificity to establish a pattern under RICO. The TAC doesn't even clearly state that there was more than one transaction. Reading the pleadings generously, one could assume that Defendants must have engaged in at least two transactions, namely one moving funds from the Ukraine to the U.S. and one moving funds from the U.S. to the Ukraine, both by way of numerous intermediaries. *See* TAC ¶ 4. But the pleadings could just as plausibly be read as describing transfers that were part of one continuous transaction that routed funds out of the Ukraine, through numerous intermediate locations (of which the U.S. was just one), and back to the Ukraine. And even taking the more generous view, i.e. assuming the existence of at least two independent transactions, nothing in the TAC specifies when these transactions took place, approximately how many there were, and most crucially, which Defendants were involved in which transactions and in what capacity. *See* Reply Mem. in Supp. [Dkt. No. 130] at 6.

Furthermore, the TAC does not state how Defendants are the proximate cause of Tymoshenko's harms.[6] Although Plaintiffs have incorporated in the TAC conclusory allegations

---

[6] The TAC alleges no facts to show how Plaintiffs Snizek and Rullis, as well as the unknown John Doe Plaintiffs, were harmed by the Defendants' alleged money laundering for the purpose of promoting bribery of a Ukrainian official. Therefore, the Court's analysis of proximate cause in the context of money laundering as a RICO predicate act focuses only on Plaintiff Tymoshenko.

that Defendants "intentionally and knowingly" funded the "unlawful investigations and prosecutions" of Tymoshenko, TAC ¶ 10, the pleadings do not describe what role each Defendant played in the "complex and circuitous" series of transfers funneling money back and forth across the Atlantic, *id.* In the RICO context, proximate cause analysis must focus on the directness of the relationship between the conduct and the harm. *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 12 (2010). Without specifying the particular contribution of each Defendant to the money laundering scheme, Plaintiffs fail to establish the requisite directness of relationship between each Defendant's conduct and the harm suffered by Tymoshenko. *See McLaughlin*, 962 F.2d at 192.

Therefore, because Plaintiffs have failed to plead a pattern of money laundering acts by Defendants that proximately caused their harms, they have failed to allege acts necessary to support their civil RICO claim.

### B.  State Law Claims

Plaintiffs also bring claims under state law alleging fraud and malicious prosecution. TAC ¶¶ 147–55. However, the TAC's RICO allegations are the only claims over which this Court has original jurisdiction. Having dismissed those claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, pursuant to 28 U.S.C. § 1367(c)(3).

## IV.   CONCLUSION

Given that this is now Plaintiffs' fourth unsuccessful attempt to plead RICO claims, and given that the changes in the TAC fail to remedy the deficiencies found in the SAC, the Court declines to grant Plaintiffs yet another opportunity to amend their pleadings. When further amendment is likely to be futile, leave to amend need not be granted. *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996) ("Plaintiffs were accorded four opportunities to

plead their claims in this case, and the deficiencies in their federal claims are fundamental. The district court did not abuse its discretion by refusing them a fifth opportunity." (internal citations omitted)); *see also Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131; *BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*, No. 09 Civ. 9783, 2013 WL 6484727, at 6* (S.D.N.Y. Dec. 9, 2013) (Sweet, J.). The changes from the SAC to the TAC are largely superficial or irrelevant and have not remedied the fundamental defects identified by this Court in *Tymoshenko II*.

For the foregoing reasons, the TAC is dismissed with prejudice. The Clerk of Court is directed to close this case.


SO ORDERED.

DATED:      New York, New York
            September 18, 2015


_____
        /s/
        KIMBA M. WOOD
        United States District Judge